UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DESHEENA ADAMS, *et al.*, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:18-CV-375-JVB-JPK |
| ) | |
| ATLANTIC RICHFIELD COMPANY, *et al.*, ) | |
| Defendants. ) | |

## **OPINION AND ORDER**

This matter is before the Court on the following motions, all of which were filed on August 21, 2020:

1. Hammond Group, Inc., Hammond Lead Products, LLC, Halstab, LLC, and Halox, LLC's Motion to Dismiss [DE 111];

2. Motion to Dismiss of the DuPont Company and the Chemours Company [DE 113];

3. Request for Judicial Notice in Support of Motion to Dismiss of the DuPont Company and the Chemours Company [DE 115];

4. Defendant U.S. Smelter and Lead Refinery, Inc.'s Motion to Dismiss for Failure to State a Claim [DE 116];

5. Request for Judicial Notice in Support of U.S. Smelter and Lead Refinery, Inc.'s Motion to Dismiss for Failure to State a Claim [DE 118];

6. Atlantic Richfield Company and BP West Coast Products LLC's Motion to Dismiss for Failure to State a Claim [DE 122];

7. Request for Oral Argument in Support of Atlantic Richfield Company and BP West Coast Products LLC's Motion to Dismiss [DE 124]; and

8. Request for Judicial Notice in Support of Atlantic Richfield Company and BP West Coast Products LLC's Motion to Dismiss [DE 125].

This matter is also before the Court on a second Request for Judicial Notice in Support of Motion to Dismiss of the Dupont Company and the Chemours Company [DE 139] filed on December 3, 2020. The motions to dismiss are fully briefed. No responses were filed to the requests for judicial notice and the request for oral argument.

The 28 plaintiffs brought suit against 14 defendants. Nine defendants have appeared and remain in this litigation: Atlantic Richfield Company and BP West Coast Products LLC (collectively, "Atlantic Richfield"); E.I. Du Pont De Nemours and Company and the Chemours Company (collectively, "DuPont"); U.S. Smelter and Lead Refinery, Inc. (U.S. Smelter); and Hammond Group, Inc., Hammond Lead Products LLC, Halstab LLC, and Halox LLC (collectively, "Hammond Lead"). Defendant BP Amoco PLC has not appeared. The remaining four defendants have been terminated from this litigation.

For the reasons discussed below, the motion for oral argument is denied and the other motions are granted.

## REQUEST FOR ORAL ARGUMENT

Under Northern District of Indiana Local Rule 7-5(c)(1), the Court, in its discretion, may grant or deny a request for oral argument. Finding oral argument unnecessary for the resolution of the pending motions, the Court denies the request.

## REQUESTS FOR JUDICIAL NOTICE

"Judicial notice is a powerful tool that must be used with caution." *Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016). "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records—such as court orders, agency decisions, administrative body reports, and government websites—are appropriate subjects of judicial notice. *See In re Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (Easterbrook, J., in chambers) (court orders); *Opoka v. I.N.S.*, 94 F.3d 392, 394-95 (7th Cir. 1996) (agency decisions); *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 n.1 (7th Cir. 2016) (administrative body reports); *Pickett v. Sheridan*

*Health Care Ctr*, 664 F.3d 632, 648 (7th Cir. 2011) (government websites). It is proper to take judicial notice that documents in the public record exist, that they say what they say, and (if applicable) that they have legal consequences. *See Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012).

Atlantic Richfield asks the Court to take judicial notice of (1) the Consent Decree Relating to Response Actions & Response Costs in Zones 1 & 3 of Operable Unit 1 of the USS Lead Site issued in Northern District of Indiana cause number 2:14-CV-312, (2) the record of decision regarding the U.S. Smelter & Lead Refinery, Inc. Superfund Site, (3) the transcript of the July 25, 2012 Public Meeting for the Proposed Cleanup Plan of the U.S. Smelter & Lead Superfund Site, (4) the October 31, 1946 warranty deed transferring ownership from International Smelting and Refining Company to the Eagle-Picher Company, (5) the November 27, 1946 warranty deed transferring ownership from International Smelting and Refining Company to the Eagle-Picher Company, (6) the January 5, 1949 warranty deed transferring ownership from International Smelting and Refining Company to Mid-West Tar Products Corporation, and (7) the July 26, 1966 warranty deed transferring ownership form Mike Mihalovich and Kathryn Mihalovich to Elroy S. Ramirez and Lupe Ramirez.

DuPont asks the Court to take judicial notice of an Environmental Protection Agency (EPA) webpage, an April 8, 2009 Press Release titled "EPA adds East Chicago site to Superfund list; proposes Elkhart, Ind., site," which can be found on the EPA website, the Complaint in *Adams v. City of East Chicago*, which is cause number 45D05-1809-CT-526 in Lake County, Indiana, Superior Court, and the Complaint in *Alvarez v. City of East Chicago*, which is cause number 45D05-1712-CT-206 in Lake County, Indiana, Superior Court.

U.S. Smelter asks the Court to take judicial notice of (1) a November 20, 1990 Order Confirming Third Amended and Restated Plan of Organization Proposed by Quantum Overseas N.V. and Castle Harlan, Inc., (2) the September 20, 2017 Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study of Operable Unit 2 of the East Chicago Superfund Site filed in CERCLA Docket No. V-W-17-C0913, (3) a November 2021 USEPA East Chicago Superfund Site Record of Decision, which was filed in this Court in case number 2:14-CV-312, and (4) a March 2020 USEPA East Chicago Superfund Site Record of Decision Amendment, Zone 1, which is available on the EPA website.

No party has filed a response or objection to any request for judicial notice. It appears that the Court can properly take judicial notice of the fact that all of these documents exist and that they say what they say. The Court can also take judicial notice that the judicial and agency decisions have a legal effect. The Court takes such judicial notice of the documents. The Court does not take judicial notice of any of the documents to establish a fact subject to reasonable dispute.

## MOTIONS TO DISMISS

On a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, the Court accepts as true all well-pleaded facts alleged by the plaintiffs and all reasonable inferences that can be drawn therefrom. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); see also *Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008). Federal Rule of Civil Procedure Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 661, 678 (2009) (citing

4

*Twombly*, 550 U.S. at 555). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).

## Background

Plaintiffs allege the following in their Amended Complaint. Defendants introduced contaminants (including lead, cadmium, antimony, and mercury) into the air, soil, and/or groundwater, which damaged Plaintiffs' properties and caused emotional distress. Defendants failed to warn or make any other communications with Plaintiffs regarding the contamination. Plaintiffs were unaware of the contamination and had no reason to know about it.

Relevant to this litigation is a piece of land designated by the EPA as the U.S. Smelter and Lead Refinery, Inc. Superfund Site ("the Site"). From 1920 to 1985, U.S. Smelter performed smelting activities on the Site. U.S. Smelter generated hazardous airborne emissions, contaminating the land on which Plaintiffs' homes and yards were built. U.S. Smelter also stockpiled hazardous waste, which ultimately leaked or spilled with the result of contaminating Plaintiff's groundwater and yards. U.S. Smelter kept the contamination's existence secret from Plaintiffs.

From 1910 to 1949, DuPont manufactured lead arsenate insecticide property abutting the Site. DuPont generated hazardous airborne emissions, contaminating the land on which Plaintiffs' homes and yards were built. DuPont also contaminated fill material, with the result of contaminating Plaintiff's groundwater and yards. The contamination continues.

From 1938 to 1965, Atlantic Richfield manufactured white lead and zinc oxide on and around the Site. Atlantic Richfield generated hazardous airborne emissions, contaminating the land on which Plaintiffs' homes and yards were built. Atlantic Richfield also contaminated fill material, with the result of contaminating Plaintiff's groundwater and yards.

From 1930 to present, Hammond Lead produced lead substances near the Site. Hammond Lead generated hazardous airborne emissions, contaminating the land on which Plaintiffs' homes and yards were built.

Plaintiff Minerva Ramirez (litigating on her own behalf and on behalf of D.R.1, C.R., and M.R.) were residents of a private, single family home in Lake County, Indiana. The remaining Plaintiffs resided in the public housing development in East Chicago, Indiana, known as the West Calumet Housing Complex (the "Complex"). The Complex was constructed on land which is now part of the Site and on which Atlantic Richfield had had its operations. The Complex was built to provide housing for low-income residents and is comprised of three-story apartment buildings and brick duplexes with large lawns. For decades, residents of the Complex were exposed to contamination directly caused by Defendants.

The EPA has been involved with the Site for more than two decades, and the Site was placed on the National Priorities List as a Superfund site in 2009. A July 25, 2016 letter from East Chicago Mayor Anthony Copeland to the Complex's residents, including Plaintiffs, informed them that ground within the Complex was highly contaminated with lead and arsenic, toxins which pose dangers. Copeland informed the residents that they would be temporarily relocated as a necessary measure to protect the residents and their children. Prior to Copeland's letter, Plaintiffs were unaware of their exposure to hazardous levels of contamination. Despite their knowledge of the contamination and its dangers, Defendants actively concealed the same from Plaintiffs.

Plaintiffs bring claims of strict liability, negligence, nuisance, trespass, intentional infliction of emotional distress, and negligent infliction of emotional distress. In briefing the instant motions, Plaintiffs concede that their complaint does not state claims for trespass or nuisance

against all Defendants or a claim of strict liability against Hammond Lead. Plaintiffs request relief of compensatory and punitive damages.

## Statute of Limitations

For personal injury actions, Indiana has a two-year statute of limitations. *Id.* § 34-11-2-4. For property claims, the period is six years. *Id.* at ¶ 34-11-2-7. "Under Indiana's discovery rule, a cause of action accrues, and the limitation period begins to run, when a claimant knows or in the exercise of ordinary diligence should have known of the injury." *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009) (citing *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840 (Ind. 1992)).

Because a statute of limitations argument is an affirmative defense, Plaintiffs need not anticipate and defend against it in their complaint. *U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003). Dismissal on a statute of limitations defense is only proper if the allegations of the complaint set forth all of the necessary elements of the defense. *Id.*

DuPont and Atlantic Richfield argue that the limitations period expired before this suit was filed for all Plaintiffs who have reached the age of majority. DuPont identifies Plaintiffs' allegations that the EPA placed the Site on the national priorities list in 2009, (Am. Compl. ¶¶ 8, 92), developed a testing and remediation plan for the Site in 2012, *id.* at ¶ 97, and filed suit against Atlantic Richfield and DuPont in 2014, *id.* at ¶ 98-99. Atlantic Richfield emphasizes meetings and communications regarding the contamination that it insists occurred.

Still, Plaintiffs alleged that, on July 25, 2016, the mayor of East Chicago sent letters to the Complex's residents, notifying them *for the first time* that they had been exposed to hazardous levels of lead or other toxins. *Id.* at ¶¶ 82-83. Plaintiffs further allege that Defendants intentionally concealed Defendants' alleged contamination from Plaintiffs. *Id.* at ¶ 87.

7

DuPont would have the Court consider the ruling of timeliness in *United States v. Atlantic Richfield Company*, 324 F.R.D. 187, 192 (N.D. Ind. 2018), but there the court was ruling on a motion to intervene, not a motion to dismiss. The plaintiffs there sought to intervene in a terminated CERCLA action. Here, the question is whether Plaintiffs' state law tort claims should be dismissed, and the Court cannot disregard Plaintiffs' properly pleaded allegations that Defendants kept the contamination a secret from Plaintiffs.

Plaintiffs have not alleged that they became aware of the contamination or that they should have become aware of the contamination at a time that would lead to their claims being time-barred. Instead, they allege that Defendants kept the contamination a secret and that they were not made aware of their exposure to hazardous levels of contaminants until July 25, 2016. This lawsuit was filed on July 6, 2018, within the applicable statute of limitations periods from the date when Plaintiffs allege that they became aware of their injuries.

**Failure to Join Required Parties**

DuPont contends that the EPA and Indiana Department of Environmental Management (IDEM) are required parties under Federal Rule of Civil Procedure 19(a)(1) because their absence in this case would prejudice DuPont. Because the EPA and IDEM cannot be joined due to sovereign immunity, DuPont argues that equity and good conscience mandate dismissal of this cause of action.

Federal Rule of Civil Procedure 19(a) governs "persons required to be joined if feasible," and dictates:

> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

DuPont argues that the EPA has been involved with the Superfund Site for over twenty years and that DuPont has an agreement with the EPA and IDEM regarding payment for the EPA's cleanup. DuPont asserts that any judgment in this case would put DuPont at risk of inconsistent obligations. DuPont is also concerned that it will be held accountable for action or inaction that was the directed by the EPA or IDEM.

DuPont's agreement with the EPA and IDEM pertains to CERCLA claims, not state law tort claims. In *Rolan v. Atl. Richfield Co.*, No. 1:16-CV-357, 2017 WL 3191791, at *19 (N.D. Ind. July 26, 2017), the court "note[d] that the governmental entities could only be required parties to the Plaintiffs' CERCLA claim," and further found that "[j]ust because the governmental entities have made policy determinations specific to the remediation efforts at the [site of contamination] does not make them 'required' for purposes of the Plaintiffs' CERCLA and state law claims." Here, there are only state law claims and not CERCLA claims. The Court agrees with the reasoning in *Rolan* that the EPA and IDEM are not required parties for Plaintiffs' state law claims.

## Collective Allegations

DuPont and U.S. Smelter argue that Plaintiffs improperly make "collective allegations" that lump all of Defendants' actions together. A complaint comprised entirely of collective allegations would be improper. However, if sufficient allegations are made to state claims against Defendants individually, the presence of collective allegations in the complaint is not improper.

While some allegations are made against "Defendants" as a whole, other allegations identify specific defendants and their alleged actions. There is no ground for dismissing the complaint as a whole, but the Court will consider, in the context of each claim, the sufficiency of the allegations made against each defendant.

### Negligence

"Prevailing on a negligence claim requires fulfillment of three elements: 1) duty owed to plaintiff by the defendant; 2) breach of duty by allowing conduct to fall below the applicable standard of care; and 3) compensable injury proximately caused by defendant's breach of duty." *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017) (citing *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016)). The duty element is dispositive as to the claim against Atlantic Richfield except for the Ramirez Plaintiffs. Plaintiffs' failure to properly allege injury is dispositive as to the other negligence claims.

   A.   Duty

In Indiana, whether a duty exists is determined by balancing the relationship between the parties, the reasonable foreseeability of harm to the person injured, and public policy concerns. *Yost v. Wabash Coll.*, 3 N.E.3d 509, 520-21 (Ind. 2014).

Atlantic Richfield and DuPont argue that they owe no duty to Plaintiffs. Where there is no prior declaration or articulation of duty, Indiana courts balance three factors to determine with a duty exists: "(1) the relationship between the parties; (2) the foreseeability of harm; and (3) public policy concerns." *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 387 (Ind. 2016).

   1.   Atlantic Richfield's Duty to Residents of the Complex

Plaintiffs allege that the Complex was built where the Atlantic Richfield plant formerly stood. (Am. Compl. ¶ 85). Atlantic Richfield argues that, as a previous owner of the same land on

10

which Plaintiffs resided, it owed no duty to Plaintiffs to not contaminate its property (which would later be the site of Plaintiffs' residences).

Courts considering the question under Indiana law of duty between past owners and subsequent owners or residents have found no duty to exist. *Walker v. City of East Chicago*, No. 2:16-CV-367, 2017 WL 4340259, at *8 (N.D. Ind. Sept. 29, 2017); *Rolan*, No. 1:16-CV-357, 2017 WL 3191791, at *16-17; *Wickens v. Shell Oil Co.*, No. 1:05-CV-645, 2006 WL 3254544, at *7-8 (S.D. Ind. Nov. 9, 2006); *cf. Mishler v. State*, 730 N.E.2d 229, 231 (Ind. Ct. App. 2000) (holding the state owed no duty to driver injured after state relinquished roadway to city).

In both the *Walker* and the *Rolan* cases, the plaintiffs were residents of the Complex who brought negligence claims against Atlantic Richfield. In those cases, Judge Moody and Judge Springmann, respectively, found that none of the three factors considered in determining whether a duty exists are present: there was no relationship between the Complex residents and Atlantic Richfield because it was not reasonably foreseeable that the property would become residential in the future, the harm from Atlantic Richfield's actions was not foreseeable (again, due to the lack of knowledge that the land would become residential), and public policy does not favor finding a duty to future, unknown possessors of one's own land. *Walker*, No. 2:16-CV-367, 2017 WL 4340259, at *8; *Rolan*, No. 1:16-CV-357, 2017 WL 3191791, at *17.

Regarding duty, Plaintiffs try to distinguish *Rolan* by noting that the plaintiffs there brought claims for trespass or nuisance, but the *Rolan* plaintiffs also brought negligence claims, so this argument is unpersuasive. Plaintiffs also indicate that they alleged proximate causation, but that is a separate element of a negligence claim and cannot overcome a lack of duty. Plaintiffs also assert that Atlantic Richfield was expected to engage in its industrial practices in a way that did not cause hazardous substances to cause injury. However, here, where the parties alleging injury are

11

subsequent residents of the same land—not, for example, residents of neighboring property—there is no relationship between the parties, the harm was not foreseeable, and public policy does not favor holding Atlantic Richfield responsible. Therefore, there is no duty to residents of the Complex, and the negligence claim against Atlantic Richfield must be dismissed on this basis for all Plaintiffs except the Ramirez Plaintiffs, who are not alleged to have resided on land once owned by Atlantic Richfield.

### 2. Duty Between all Other Plaintiffs and Defendants

Regarding all other Defendants and Atlantic Richfield as to the Ramirez Plaintiffs, Plaintiffs contend that Defendants had the duty to not contaminate the properties around their operations, exposing Plaintiffs to hazardous substances as a result.

Unlike Atlantic Richfield, the other Defendants operated on land neighboring what later became the site of the Complex instead of the same land where the Complex is located. Unlike the other plaintiffs, the Ramirez Plaintiffs allegedly resided on land that is within the EPA-designated Site but is not alleged to be on the former Atlantic Richfield property. A property owner who processes hazardous materials on its land owes a "duty to exercise reasonable care when handling the hazardous materials in order to prevent contamination from leaving its property." *Rolan*, No. 1:16-CV-357, 2017 WL 3191791, at *18; *see also KB Home Indiana Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297, 299-300, 305 (Ind. Ct. App. 2010). These Plaintiffs have alleged that they resided at property neighboring Defendants' properties and have thus sufficiently alleged duty.

### B. Proximate Causation of Compensable Injury

U.S. Smelter and Hammond Lead argue that Plaintiffs have not sufficiently pleaded proximate causation, noting that Plaintiffs have not alleged that but for U.S. Smelter's and Hammond Lead's actions the contamination would not have occurred. This argument fails because

Indiana does not require that a defendant be *the* proximate cause of damages in a negligence action; it requires only that a defendant be *a* proximate cause. *Rolan*, 2017 WL 3191791, at *18; *Carey v. Ind. Physical Therapy, Inc.*¸926 N.E.2d 1126, 1129 (Ind. Ct. App. 2010). Plaintiffs sufficiently allege that U.S. Smelter and Hammond Lead were proximate causes of negligent contamination of the Complex property. *See* (Am. Compl. ¶¶ 52-53, 78-83).

Regarding "compensable injury," Plaintiffs have not asserted any specific injury sustained by any Plaintiff due to Defendants' negligence. Plaintiffs' allegations of injury are conclusory and do not meet the standard of pleading required by *Twombly* and *Iqbal*. Though raised in the briefing, Plaintiffs do not directly address these arguments. Plaintiffs' allegation that "[a]s a direct and proximate result of each Defendant's breach of its duties, Plaintiffs have suffered and continue to suffer financial, physical, mental, and emotional damages," (Am. Compl. ¶ 148), is conclusory and, alone, does not rise to the level of pleading required by *Twombly* and *Iqbal*. Plaintiffs have alleged *exposure* to environmental contaminants, but they have not alleged any specific resulting *injury*. "[T]he threat of future harm, not yet realized, is not enough" to satisfy the damages element of a negligence action. *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 155 F. Supp. 2d 1069, 1086 (S.D. Ind. 2001) (quoting W. Page Keeton et al., Prosser and Keeton on Torts 165 (5th ed.1984)) (discussing both negligence and strict liability claims). Plaintiffs have failed to allege damages, so their negligence claims must be dismissed.[1]

### Intentional Infliction of Emotional Distress

In Indiana, the tort of intentional infliction of emotional distress has been committed when "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Williams v. Tharp*, 914 N.E.2d 756, 769 n.4 (Ind. 2009) (quoting *Cullison v.*

---

[1] Because the claims are being dismissed for failure to adequately allege injury, the Court need not address the arguments concerning breach of duty.

*Medley*, 570 N.E.2d 27, 31 (Ind. 1991)). "What constitutes extreme and outrageous conduct depends, in part, upon prevailing cultural norms and values," but can sometimes be determined as a matter of law. *Creel v. I.C.E. & Assocs., Inc.*, 771 N.E.2d 1276, 1282 (Ind. Ct. App. 2002). However, "[i]f reasonable persons can differ regarding the extremity and outrageousness of certain conduct, then the matter should be left to a jury's determination." *State v. Alvarez by next friend Alvarez*, 150 N.E.3d 206, 219 (Ind. Ct. App. 2020). Furthermore, a claim for IIED requires "the intent to harm one emotionally." *Tucker v. Roman Catholic Diocese of Lafayette-in-Indiana*, 837 N.E.2d 596, 603 (Ind. Ct. App. 2005) (quoting *Cullison*, 570 N.E.2d at 31).

Defendants contend that Plaintiffs have not alleged sufficiently extreme or outrageous conduct by any defendant such that Plaintiffs have a claim for intentional infliction of emotional distress (IIED). Plaintiffs posit that they have alleged extreme and outrageous conduct, specifically that Defendants stood silent while knowingly exposing people to toxic substances and intentionally concealing the fact of contamination. Citing *State v. Alvarez*, Plaintiffs argue that the knowing exposure of others to toxic substances is extreme and outrageous. 150 N.E.3d at 219. Though Hammond Lead argues that its actions could not be extreme or outrageous toward Plaintiffs because at the time of its alleged manufacturing the Complex did not exist, the concealment of the contamination is not necessarily constrained in time to the period of each Defendant's industrial operations at the Site. At this early stage in the litigation, the Court cannot say as a matter of law that Defendants' actions, as alleged, are not extreme and outrageous.

However, Plaintiffs have insufficiently alleged that any defendant acted with the necessary level of intent to harm Plaintiffs emotionally. Plaintiffs argue that they alleged that the Defendants acted with reckless disregard toward Plaintiffs' health, safety, and wellbeing, which resulted in Plaintiffs' emotional distress. *See* (Am. Compl. ¶¶ 162-66). But, Plaintiffs failed to allege that

14

Defendants acted intentionally or recklessly to harm Plaintiffs emotionally. Plaintiffs do not allege that, at minimum, Defendants knew there was a high probability that their actions would result in Plaintiffs' emotional distress. *See Chivers v. Cent. Noble Cmty. Sch.*, 423 F. Supp. 2d 835, 857 (N.D. Ind. 2006). Accordingly, this claim must be dismissed.

### Negligent Infliction of Emotional Distress

"[A]ctions seeking damages for emotional distress resulting from the negligence of another are permitted in two situations: where the plaintiff has (1) witnessed or come to the scene soon thereafter the death or severe injury of certain classes of relatives . . . or (2) suffered a direct impact." *Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011) (citing *Atl. Coast Airlines v. Cook*, 857 N.E.2d 989, 998 (Ind. 2006)). "[I]ndependent, stand-alone actions for negligent infliction of emotional distress are not cognizable in Indiana." *Id.* Because the Court found, above, that dismissal of the negligence claim is required, the negligent infliction of emotional distress claims must also be dismissed.

### Strict Liability

"Indiana recognizes the doctrine of strict liability stemming from carrying on an abnormally dangerous activity." *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 891 F.2d 611, 615 (7th Cir. 1989) (citing *Enos Coal Mining Co. v. Schuchart*, 188 N.E.2d 406 (1963); *Erbrich Products Co. v. Wills*, 509 N.E.2d 850, 853 (Ind. Ct. App. 1987)). "One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." *Fechtman v. U.S. Steel Corp.*, 994 N.E.2d 1243, 1247 (Ind. Ct. App. 2013) (quoting Restatement (Second) of Torts § 519 (1977)). As the Court found with regard to the negligence claims above, Plaintiffs have not sufficiently pleaded injury that meets the requirements of *Twombly* and *Iqbal*,

15

alleging only, in conclusory fashion, that "[a]s a direct and proximate result of each Defendant's breach of its duties, Plaintiffs have suffered and continue to suffer financial, physical, mental, and emotional damages." (Am. Compl. ¶ 127). Accordingly, this claim, too, must be dismissed.[2]

### Request for Leave to Amend

Plaintiffs have requested leave to amend their complaint, which, pursuant to Federal Rule of Civil Procedure 15(a), should be freely granted absent undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice, or futility. The Court sets the deadline for the filing of any motion to amend the pleadings for December 15, 2021.

### CONCLUSION

Based on the foregoing, the Court hereby:

1. **GRANTS** Hammond Group, Inc., Hammond Lead Products, LLC, Halstab, LLC, and Halox, LLC's Motion to Dismiss [DE 111];

2. **GRANTS** the Motion to Dismiss of the DuPont Company and the Chemours Company [DE 113];

3. **GRANTS** the Request for Judicial Notice in Support of Motion to Dismiss of the DuPont Company and the Chemours Company [DE 115];

4. **GRANTS** Defendant U.S. Smelter and Lead Refinery, Inc.'s Motion to Dismiss for Failure to State a Claim [DE 116];

5. **GRANTS** the Request for Judicial Notice in Support of U.S. Smelter and Lead Refinery, Inc.'s Motion to Dismiss for Failure to State a Claim [DE 118];

6. **GRANTS** Atlantic Richfield Company and BP West Coast Products LLC's Motion to Dismiss for Failure to State a Claim [DE 122];

7. **DENIES** the Request for Oral Argument in Support of Atlantic Richfield Company and BP West Coast Products LLC's Motion to Dismiss [DE 124];

8. **GRANTS** the Request for Judicial Notice in Support of Atlantic Richfield Company and BP West Coast Products LLC's Motion to Dismiss [DE 125]; and

---

[2] In the interest of judicial economy and because all claims in the First Amended Complaint are dismissed, the Court will not address the additional arguments for dismissing Plaintiffs' pleading.

16

9. **GRANTS** the Request for Judicial Notice in Support of Motion to Dismiss of the DuPont Company and the Chemours Company [DE 139].

The Court **DISMISSES** the Amended Complaint. The Court **SETS** the deadline to file any motion to amend the pleadings for **December 15, 2021**.

SO ORDERED on October 15, 2021.

                                           s/ Joseph S. Van Bokkelen
                                           JOSEPH S. VAN BOKKELEN, JUDGE
                                           UNITED STATES DISTRICT COURT