UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DESHEENA ADAMS, et al., )
)
Plaintiffs, )
)
v. )
)
ATLANTIC RICHFIELD COMPANY, et al., )    CAUSE NO.:  2:18-cv-00375-JVB-JPK
)
Defendants. )

**ATLANTIC RICHFIELD COMPANY AND BP WEST COAST PRODUCTS LLC'S
MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
<u>MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

LEGAL STANDARD ............................................................................. 2

ARGUMENT ........................................................................................ 4

    I.    Plaintiffs Have Not Cured the Deficiencies in Their Negligence and Negligent Infliction of Emotional Distress Claims ................................. 4

        A.    The Court Already Held That Atlantic Richfield and BPWCP Owe No Duty to the Former Housing Complex Plaintiffs ............................................................................... 5

        B.    The Ramirez Plaintiffs' Proposed Amended Counts for Negligence and Negligent Infliction of Emotional Distress Do Not State Claims ................................................................ 6

            1.    The Ramirez Plaintiffs Still Fail to State a Claim for Negligence ......................................................................... 6

            2.    The Ramirez Plaintiffs Still Fail to State a Claim for Negligent Infliction of Emotional Distress ................................. 12

    II.    The Proposed Amended Strict Liability Count Does Not State a Claim ................................................................................................ 14

    III.    Medical Monitoring Is Not a Cause of Action ................................... 18

    IV.    The Statute of Limitations Bars the Adult Plaintiffs' Proposed Amended Claims ............................................................................... 19

    V.    Plaintiffs Fail to Allege Substantive Allegations Against BPWCP ..................... 22

CONCLUSION ..................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*6232 Harrison Ave. LLC v. City of Hammond*,
    2021 WL 5764857 (Ind. Ct. App. Dec. 6, 2021) ...................................................................11

*AlliedSignal, Inc. v. Ott*,
    785 N.E.2d 1068 (Ind. 2003) ....................................................................................................10

*Alvarez v. Atl. Richfield Co.*,
    No. 2:17-cv-00414, 2021 WL 3161461 (N.D. Ind. July 26, 2021)......................................7, 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................................3, 9

*Atl. Coast Airlines v. Cook*,
    857 N.E.2d 989 (Ind. 2006) ........................................................................................ 12, 13, 14

*B.N.T. v. Hindson*,
    No. 1:09-cv-771, 2009 WL 4746343 (S.D. Ind. Dec. 7, 2009) .............................................13

*Baker v. Atl. Richfield Co.*,
    No. 2:17-CV-429, 2021 WL 3726050 (N.D. Ind. Aug. 23, 2021).........................................15

*Bd. of Cnty. Comm'rs v. Brown Grp. Retail, Inc.*,
    598 F. Supp. 2d 1185 (D. Colo. 2009) ..................................................................................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................................3

*Blake v. Calumet Constr. Corp.*,
    674 N.E.2d 167 (Ind. 1996), *abrogated on other grounds by Peters v. Forster*,
    804 N.E.2d 736 (Ind. 2004) ......................................................................................................7

*Bridges v. Ky. Stone Co.*,
    425 N.E.2d 125 (Ind. 1981) ....................................................................................................16

*Callihan v. Surnaik Holdings of WV, LLC*,
    No. 2:17-CV-04386, 2018 WL 6313012 (S.D.W. Va. Dec. 3, 2018)....................................18

*Charleston v. Bd. of Trs. of Univ. of Ill.*,
    741 F.3d 769 (7th Cir. 2013) .....................................................................................................2

*Conder v. Wood*,
    716 N.E.2d 432 (Ind. 1999) ....................................................................................................12

*Consol. Rail Corp. v. Allied Corp.*,
  882 F.2d 254 (7th Cir. 1989) ...................................................................................15

*Cooper Indus., LLC v. City of South Bend*,
  899 N.E.2d 1274 (Ind. 2009) ........................................................................... 19, 20

*DirectBuy, Inc. v. Giacchi*,
  No. 2:09CV110, 2012 WL 2407698 (N.D. Ind. June 25, 2012)................................22

*Dow Chem. Co. v. Ebling*,
  723 N.E.2d 881 (Ind. Ct. App. 2000), *aff'd in part, vacated in part on other grounds*,
  753 N.E.2d 633 (Ind. 2001) ...................................................................................16

*Erbrich Prods. Co. v. Wills*,
  509 N.E.2d 850 (Ind. Ct. App. 1987) ................................................................ 16, 17

*Fechtman v. U.S. Steel Corp.*,
  994 N.E.2d 1243 (Ind. Ct. App. 2013) ......................................................... 15, 16, 17

*G.J. Leasing Co. v. Union Elec. Co.*,
  854 F. Supp. 539 (S.D. Ill. 1994), *aff'd*, 54 F.3d 379 (7th Cir. 1995) ...................16

*Garcia v. City of Chicago*,
  24 F.3d 966 (7th Cir. 1994) .................................................................................3, 5

*Goetze v. Kroger Co.*,
  No. 1:18-cv-01701, 2020 WL 246407 (S.D. Ind. Jan. 15, 2020) ........................6, 7

*Gonzalez-Koeneke v. West*,
  791 F.3d 801 (7th Cir. 2015) ..................................................................................3

*Goodwin v. Yeakle's Sports Bar & Grill, Inc.*,
  62 N.E.3d 384 (Ind. 2016)..................................................................................4, 6

*Gunawardana v. Am. Veterinary Med. Ass'n*,
  No. 21-1330, 2021 WL 4951697 (7th Cir. Oct. 25, 2021) ......................................3

*Hartz v. Lain*,
  No. 2:13-CV-9, 2016 WL 3014842 (N.D. Ind. May 26, 2016)................................9

*Helman v. Barnett's Bail Bonds, Inc.*,
  No. 3:16-CV-00560, 2017 WL 955400 (N.D. Ind. Mar. 13, 2017)..........................3

*Hostetler v. Johnson Controls, Inc.*,
  No. 3:15-CV-226, 2020 WL 5543081 (N.D. Ind. Sept. 16, 2020) ........................10

*Hostetler v. Johnson Controls Inc.*,
  No. 3:15-CV-226, 2021 WL 5087261 (N.D. Ind. Nov. 2, 2021) ...........................14

iv

*Hunt v. Am. Wood Preservers Inst.*,
    No. IP 02-0389, 2002 WL 34447541 (S.D. Ind. July 31, 2002)...........................................18

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
    155 F. Supp. 2d 1069 (S.D. Ind. 2001)................................................................................10

*Inland Steel v. Pequignot*,
    608 N.E.2d 1378 (Ind. Ct. App. 1993) ...............................................................................16

*Johnson v. Abbott Lab'ys*,
    No. 06C01-0203-PL-89, 2004 WL 3245947 (Ind. Cir. Ct. Dec. 31, 2004) ..........................18

*Jones v. Griggs*,
    612 F. App'x 395 (7th Cir. 2015) .......................................................................................13

*Joshi v. United States*,
    No. 3:08-cv-498, 2009 WL 2449234 (N.D. Ind. Aug. 6, 2009) ...........................................15

*KB Homes Ind. Inc. v. Rockville TBD Corp.*,
    928 N.E.2d 297 (Ind. Ct. App. 2010) ..................................................................................8

*Martin Oil Mktg. Ltd. v. Katzioris*,
    908 N.E.2d 1183 (Ind. Ct. App. 2009) ...............................................................................22

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011) ...............................................................................................3

*McDaniel v. Bus. Inv. Grp., Ltd.*,
    709 N.E.2d 17 (Ind. Ct. App. 1999)......................................................................................4

*Metro-N. Commuter R.R. Co. v. Buckley*,
    521 U.S. 424 (1997) ..........................................................................................................14

*Morris v. Arcelormittal USA, Inc.*,
    No. 2:09-CV-108, 2010 WL 11680298 (N.D. Ind. Aug. 12, 2010)......................................10

*Myers v. Maxson*,
    51 N.E.3d 1267 (Ind. Ct. App. 2016)..................................................................................20

*ONB Ins. Grp. v. Estate of Megel*,
    107 N.E.3d 484 (Ind. Ct. App. 2018) ...................................................................................6

*Pabst Brewing Co. v. Corrao*,
    176 F.R.D. 552 (E.D. Wis. 1997), *aff'd*, 161 F.3d 434 (7th Cir. 1998) ...............................19

*Penske Truck Leasing Co. v. Dalton-McGrath*,
    157 N.E.3d 5 (Ind. Ct. App. 2020) .......................................................................................6

*Perkins v. Stesiak*,
    968 N.E.2d 319 (Ind. Ct. App. 2012) ......................................................................... 13, 14

*Pflanz v. Foster*,
    888 N.E.2d 756 (Ind. 2008) ......................................................................................... 11

*Pickens v. N.Y. Life Ins.*,
    No. 2:17-CV-190, 2019 WL 4740829 (N.D. Ind. Sept. 27, 2019) ................................ 12

*Read v. Corning Inc.*,
    351 F. Supp. 3d 342 (W.D.N.Y. 2018).......................................................................... 17

*Refined Metals Corp. v. NL Indus., Inc.*,
    No. 1:19-CV-4578, 2020 WL 1448880 (S.D. Ind. Mar. 25, 2020) ............................... 20

*Rolan v. Atl. Richfield Co.*,
    No. 1:16-CV-357, 2017 WL 3191791 (N.D. Ind. July 26, 2017)................................... 15

*Ruckelshaus v. Cowan*,
    963 F.3d 641 (7th Cir. 2020) ....................................................................................... 20

*Schuchman/Samberg Invs., Inc. v. Hoosier Penn Oil Co.*,
    58 N.E.3d 241 (Ind. Ct. App. 2016)................................................................. 20, 21, 22

*Spangler v. Bechtel*,
    958 N.E.2d 458 (Ind. 2011) ......................................................................................... 4, 5

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) ....................................................................................... 3

*Wallen v. Mapletree Transp. Inc.*,
    No. 1:15-cv-111, 2016 WL 7449509 (N.D. Ind. Dec. 28, 2016)...................................... 7

*Wellesley Hills Realty Tr. v. Mobil Oil Corp.*,
    747 F. Supp. 93 (D. Mass. 1990) ................................................................................. 15

*Wickens v. Shell Oil Co.*,
    No. 1:05-CV-645, 2006 WL 3254544 (S.D. Ind. Nov. 9, 2006).................................... 15

*Yost v. Wabash Coll.*,
    3 N.E.3d 509 (Ind. 2014)............................................................................................... 6

## Statutes and Rules

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 3

Fed. R. Civ. P. 15(a)(2) ...................................................................................................... 2

Ind. Code § 1-1-4-5(a)(24) ............................................................................................... 19

Ind. Code § 34-11-2-4(a)(1) ........................................................................................19

Ind. Code § 34-11-6-1 ................................................................................................19

**Other Authorities**

Restatement (Second) of Torts § 520 (Am. Law Inst. 1965) ......................................18

## PRELIMINARY STATEMENT

Plaintiffs filed this lawsuit against Atlantic Richfield Company ("Atlantic Richfield"), BP West Coast Products LLC ("BPWCP"), and other Defendants on July 6, 2018.  Dkt. 5, Compl. Plaintiffs filed a First Amended Complaint in federal court on December 5, 2018.  Dkt. 59, First Am. Compl.  On October 15, 2021, the Court granted Atlantic Richfield and BPWCP's motion to dismiss the First Amended Complaint in full.  Dkt. 157, Opinion & Order ("Order").[1]  Plaintiffs now seek a third bite at the apple and move for leave to amend their complaint against Atlantic Richfield and BPWCP.  Dkt. 162-1, Ex. A, Prop. Second Am. Compl. ("Prop. SAC").[2]  The Court should deny Plaintiffs' Motion because all four of Plaintiffs' proposed amended tort claims are futile.

Plaintiffs' proposed amendment does not—and cannot—cure the deficiencies that the Court identified when dismissing Plaintiffs' First Amended Complaint against Atlantic Richfield and BPWCP.  All but four Plaintiffs formerly resided at the West Calumet Housing Complex ("former Housing Complex Plaintiffs," *see* Prop. SAC ¶ 33).  *Id.* ¶¶ 33–34.  As the Court already correctly held, Atlantic Richfield and BPWCP owe no duty under tort law to those Plaintiffs, Order 10–12, and therefore their proposed amended count for negligence fails to state a claim against Atlantic Richfield and BPWCP.  The Court also already held that without a viable negligence claim, the former Housing Complex Plaintiffs cannot state a derivative claim for negligent infliction of emotional distress ("NIED").

---

[1]   Contrary to Plaintiffs' assertion, *see* Dkt. 162, Mot. Leave File Second Am. Compl. ¶ 2 ("Pls.' Mot."), the Court's prior Order dismissed Plaintiffs' strict liability claim against all Defendants because Plaintiffs failed to adequately plead injury.  Order 15–16.

[2]   The proposed amended complaint that Plaintiffs attached to their Motion is erroneously titled "First Amended Complaint" rather than "Second Amended Complaint."

The proposed amended negligence and NIED counts asserted by four Plaintiffs who allegedly reside in a private residence ("Ramirez Plaintiffs," *see* Prop. SAC ¶¶ 33–34) located within the USS Lead Superfund Site ("Site") likewise fail to state claims because Atlantic Richfield and BPWCP do not owe any duty to them either.  The Ramirez Plaintiffs' negligence claim also fails because the Proposed SAC does not adequately allege any breach of a duty by Atlantic Richfield and BPWCP's alleged predecessors and, like the First Amended Complaint, fails to adequately allege that any Plaintiff suffered from any specific resulting injury.  *See* Order 13.  The Ramirez Plaintiffs' proposed amended claim for NIED likewise fails because Plaintiffs have not adequately alleged a direct physical impact as required by Indiana law.  The Proposed SAC fails to state a claim for strict liability as to all Plaintiffs because the alleged conduct is not abnormally dangerous as a matter of law and because the Proposed SAC still does "not sufficiently plead[] injury."  *See id.* at 15–16.  And permitting Plaintiffs to assert a new cause of action for medical monitoring would be futile because Indiana does not recognize medical monitoring as a standalone cause of action.

Plaintiffs' proposed amendment has other deficiencies as well.  Plaintiffs' allegations about efforts to remediate lead and arsenic contamination at the Site asserted in a complaint they filed against government entities in Lake Superior Court establish that the adult Plaintiffs' proposed amended counts are time-barred.  Leave to amend as to BPWCP also should be denied because the Proposed SAC lacks any substantive allegations against BPWCP.  Accordingly, Plaintiffs' proposed amendment is futile and the Court should deny Plaintiffs' Motion.

## LEGAL STANDARD

Courts have broad discretion under Rule 15(a)(2) of the Federal Rules of Civil Procedure to deny leave to amend where the amendment is futile.  *Charleston v. Bd. of Trs. of Univ. of Ill.*, 741 F.3d 769, 776–77 (7th Cir. 2013).  Futile amendments include those that "restat[e] the same

facts using different language, reassert[] claims previously determined, fail[] to state a valid theory of liability, and the inability to survive a motion to dismiss." *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994) (citations omitted).  A plaintiff's motion to amend must state the grounds for amending with particularity and denial is warranted where "the plaintiff fails to establish that the proposed amendment would cure the deficiencies identified in the earlier complaint." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015); *Gunawardana v. Am. Veterinary Med. Ass'n*, No. 21-1330, 2021 WL 4951697, at *4 (7th Cir. Oct. 25, 2021) (affirming denial of leave to amend where plaintiffs "did not explain how their proposed second amended complaint addressed the legal and factual shortfalls of the first").

An amendment is futile if the amendment could not survive a motion to dismiss under Rule 12(b)(6).  *Helman v. Barnett's Bail Bonds, Inc.*, No. 3:16-CV-00560, 2017 WL 955400, at *3 (N.D. Ind. Mar. 13, 2017).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), which requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In other words, a plaintiff must allege sufficient facts that "raise a right to relief above the speculative level." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

The Seventh Circuit has observed that "[f]or complaints involving complex litigation"— like the one here—"a fuller set of factual allegations may be necessary to show that relief is plausible." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

**I.     Plaintiffs Have Not Cured the Deficiencies in Their Negligence and Negligent Infliction of Emotional Distress Claims**

Plaintiffs' proposed amendment does not—and cannot—cure the deficiencies that the Court identified in dismissing Plaintiffs' negligence and NIED claims against Atlantic Richfield and BPWCP.  *See* Order 10–13.  A negligence claim "is comprised of three elements: 1) a duty on the part of the defendant to conform his conduct to the standard of care arising from his relationship with the plaintiff; 2) the defendant's failure to conform to the requisite standard of care; and 3) injury to the plaintiff that was proximately caused by the breach."  *McDaniel v. Bus. Inv. Grp., Ltd.*, 709 N.E.2d 17, 20 (Ind. Ct. App. 1999).  The threshold question is whether the defendant owes a duty to the plaintiff because "[a]bsent a duty there can be no negligence or liability based upon the breach."  *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016).  Further, where there is no viable negligence claim, a derivative claim for NIED must be dismissed because Indiana does not recognize a standalone claim to recover damages for alleged emotional distress.  *See Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011).

Plaintiffs' proposed amended claims for negligence and NIED fail as a matter of law because Atlantic Richfield and BPWCP do not owe any duty to Plaintiffs and, absent a viable negligence claim, the derivative NIED count fails as well.  The proposed amended negligence claim also is futile because Plaintiffs do not sufficiently allege any breach of a duty by Atlantic Richfield and BPWCP's alleged predecessors or that any Plaintiff has suffered from any compensable harm.  In addition, Plaintiffs fail to state a claim for NIED because the Proposed SAC does not adequately allege a direct physical impact.

**A.** **The Court Already Held That Atlantic Richfield and BPWCP Owe No Duty to the Former Housing Complex Plaintiffs**

The Court already held that Atlantic Richfield and BPWCP owe "no duty to residents of the [West Calumet Housing] Complex" and, therefore, the former Housing Complex Plaintiffs cannot state claims for negligence or NIED against Atlantic Richfield and BPWCP as a matter of law.  Order 12.  The Proposed SAC does not—and cannot—cure this deficiency.

The Court held that Atlantic Richfield and BPWCP owe "no duty" to the former Housing Complex Plaintiffs because "here, where the parties alleging injury are subsequent residents of the same land . . . there is no relationship between the parties, the harm was not foreseeable, and public policy does not favor holding Atlantic Richfield responsible." *Id.* at 11–12.  Nothing in Plaintiffs' Proposed SAC affects that finding, which remains "dispositive" as to former Housing Complex Plaintiffs' negligence claim against Atlantic Richfield and BPWCP.  Order 10.[3]  As the Court also previously held, because the negligence claim must be dismissed, "the negligent infliction of emotional distress claims must also be dismissed," as "[i]ndependent, stand-alone actions for negligent infliction of emotional distress are not cognizable in Indiana."  *Id.* at 15 (quoting *Spangler*, 958 N.E.2d at 466).

Because the former Housing Complex Plaintiffs' proposed amended counts for negligence and NIED seek to "reassert[] claims previously determined," amendment to assert these claims against Atlantic Richfield and BPWCP is futile.  *See Garcia*, 24 F.3d at 970.[4]

---

[3]   Plaintiffs entirely ignore the Court's previous finding that Atlantic Richfield and BPWCP owe no duty to the former Housing Complex Plaintiffs, stating incorrectly that "[t]he court dismissed the negligence claim because the plaintiffs failed to adequately plead an injury."  *See* Pls.' Mot. ¶ 3.

[4]   Amendment also is futile because both claims suffer the same flaws that preclude the Ramirez Plaintiffs' proposed amended counts for negligence and NIED.  *See infra* pp. 6–14.

**B.      The Ramirez Plaintiffs' Proposed Amended Counts for Negligence and Negligent Infliction of Emotional Distress Do Not State Claims**

**1.      The Ramirez Plaintiffs Still Fail to State a Claim for Negligence**

The Ramirez Plaintiffs' proposed amended negligence claim is futile because (1) Atlantic Richfield and BPWCP owe no duty to the Ramirez Plaintiffs; (2) Plaintiffs do not allege any breach of a duty by Atlantic Richfield and BPWCP's alleged predecessors; and (3) Plaintiffs do not adequately allege the element of causation, i.e., that they have suffered from any specific resulting alleged injury.

**a.      Atlantic Richfield and BPWCP Owe No Duty to the Ramirez Plaintiffs**

To determine whether a duty exists, Indiana courts balance three factors: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Yost v. Wabash Coll.*, 3 N.E.3d 509, 520–21 (Ind. 2014) (citation omitted). "[A] duty of reasonable care is not owed to the world at large, but instead arises out of a relationship between the parties." *Penske Truck Leasing Co. v. Dalton-McGrath*, 157 N.E.3d 5, 13 (Ind. Ct. App. 2020). Courts consistently recognize that the absence of a relationship between the plaintiff and the defendant militates against finding that the defendant owed a duty to the plaintiff. *See, e.g.*, *ONB Ins. Grp. v. Estate of Megel*, 107 N.E.3d 484, 492, 494 (Ind. Ct. App. 2018) (finding that defendant owed no duty where there was no direct relationship with plaintiffs); *accord Goetze v. Kroger Co.*, No. 1:18-cv-01701, 2020 WL 246407, at *2 (S.D. Ind. Jan. 15, 2020). "[T]he foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Goodwin*, 62 N.E.3d at 391 (citation omitted). "[T]he mere fact that a particular outcome is 'sufficiently likely' is not enough to give rise to a duty." *Id.* at 392. Courts instead assess "whether a reasonable

person would recognize the likelihood of harm and take precautions to avoid it." *Goetze*, 2020 WL 246407, at *3.

Here, Atlantic Richfield and BPWCP's alleged predecessors sold their industrial operations and the land on which those operations occurred in 1946[5]—*at least twenty years before* the Ramirez Plaintiffs could have acquired an interest in their residence.[6] Thus, Atlantic Richfield and BPWCP had no relationship with the Ramirez Plaintiffs at the time of their earliest alleged injury, and Indiana law is clear that a duty can only be owed to another if there is some connection between the plaintiff and the defendant at the time the alleged injury occurred. *See, e.g.*, *Wallen v. Mapletree Transp. Inc.*, No. 1:15-cv-111, 2016 WL 7449509, at *3 (N.D. Ind. Dec. 28, 2016) (Van Bokkelen, J.) ("To establish a claim for negligence under Indiana law, a plaintiff must prove that the defendant owed him a duty of care *at the time of the injury* . . . ." (emphasis added)); *accord Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 169–70 (Ind. 1996) (same), *abrogated on other grounds by Peters v. Forster*, 804 N.E.2d 736 (Ind. 2004).

*Alvarez v. Atlantic Richfield Co.*, No. 2:17-cv-00414, 2021 WL 3161461 (N.D. Ind. July 26, 2021), is distinguishable. Unlike there, the Ramirez Plaintiffs do not allege that they own the

---

[5]   *See* Dkt. 125, Request for Judicial Notice in Supp. Atlantic Richfield Co. & BP West Coast Products LLC's Mot. to Dismiss ("RJN") ¶¶ D–E. The Court already took judicial notice of historical deeds showing that Atlantic Richfield and BPWCP's alleged predecessors sold any interest in the East Chicago property on which their industrial operations were conducted in 1946. *See* Order 3–4 (granting Atlantic Richfield and BPWCP's RJN); Dkt. 125-4, RJN Ex. D; Dkt. 125-5, RJN Ex. E. Those deeds also show that Atlantic Richfield and BPWCP's alleged predecessors sold their remaining interest in the northern portion of the East Chicago property in 1949. *See* RJN ¶ F; Dkt. 125-6, RJN Ex. F.

[6]   Although the Ramirez Plaintiffs do not allege when they acquired an interest in their home, the Court already took judicial notice of a historical deed showing that Mike Mihalovich and Kathryn Mihalovich transferred the deed for the Ramirez Plaintiffs' property to Elroy S. Ramirez and Lupe Ramirez (neither of whom is a Plaintiff here) in 1966. Order 4–5; *see* RJN ¶ G; RJN Ex. G. Thus, none of the Ramirez Plaintiffs could have acquired an interest in the property before 1966.

property.  *See id.* at *5 (reasoning that under *KB Homes Indiana Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297 (Ind. Ct. App. 2010), "the necessary allegation [to sufficiently allege a duty to not contaminate] is that Plaintiffs own the property"); *see also* Prop. SAC ¶ 34 (alleging only that "[t]he Ramirez plaintiffs were and are *residents* of a private, single-family home" (emphasis added)).[7]

The "broad type of plaintiff and harm involved" also precludes the Ramirez Plaintiffs from recovering under a negligence theory against Atlantic Richfield and BPWCP.  The Proposed SAC contains no allegations to suggest that it was reasonably foreseeable that the operations of Atlantic Richfield and BPWCP's alleged predecessors would have any purportedly adverse impacts on unknown "future residents living on or near their facilities" more than seventy-five years later.  *See* Prop. SAC ¶ 6; *see also* note 5.  To the contrary, Plaintiffs allege that in 1966—more than twenty years after Atlantic Richfield and BPWCP's alleged predecessors ceased operating—the property on which those operations were conducted was a "vacant area[]" mainly "surrounded by industries."  Prop. SAC ¶ 86.

Because Atlantic Richfield, BPWCP, and their alleged predecessors have no connection with the Ramirez Plaintiffs, Atlantic Richfield and BPWCP owe no duty to them.  To impose a duty on Atlantic Richfield and BPWCP under these circumstances—where their alleged predecessors conducted operations on their own property and sold that property more than seventy-five years ago—would go far beyond what Indiana courts have allowed.

---

[7]  Further, the Court's prior conclusion that Plaintiffs' First Amended Complaint "sufficiently alleged duty" was premised on Plaintiffs' allegation "that they resided at property neighboring Defendants' properties."  Order 12.  The Ramirez Plaintiffs, however, fail to allege that their home is a "neighboring" property to the property once operated by Atlantic Richfield and BPWCP's alleged predecessors.  *See* Prop. SAC ¶ 34.

**b.    The Ramirez Plaintiffs Do Not Adequately Allege a Breach of Duty by Atlantic Richfield and BPWCP's Alleged Predecessors**

The Ramirez Plaintiffs' proposed amended count for negligence also fails because they do not adequately allege any breach of a duty by Atlantic Richfield and BPWCP's alleged predecessors. The Proposed SAC alleges no facts to support a conclusion that any conduct by Atlantic Richfield and BPWCP's alleged predecessors was substandard. The conclusory assertion that Atlantic Richfield and BPWCP breached a duty "by [their] negligent acts and omissions in operating and maintaining [their] operations on and around the Site," Prop. SAC ¶ 150, is insufficient under *Iqbal* because it is unsupported by any factual allegations. *See Iqbal*, 556 U.S. at 678; *Hartz v. Lain*, No. 2:13-CV-9, 2016 WL 3014842, at *3 (N.D. Ind. May 26, 2016) (dismissing negligence claim where plaintiff "ha[d]n't pointed to any evidence that would show that [defendants] breached that duty").

**c.    The Ramirez Plaintiffs' Proposed Amended Count for Negligence Fails to Adequately Allege Injury**

Like the First Amended Complaint, the Proposed SAC does "no[t] assert[] any specific injury sustained by any Plaintiff due to Defendants' negligence." Order 13. Instead, Plaintiffs' allegations of injury in the Proposed SAC amount to the same conclusory allegations that they were "expos[ed] to lead particles" and "ingested hazardous levels of lead or other toxins," and a new laundry list of thirty-four health effects that Plaintiffs *may or may not have* "experienced and/or suffered an increased risk of experiencing." Prop. SAC ¶¶ 154–157. These allegations do not suffice.

Plaintiffs' conclusory assertions of "exposure" and "ingestion," *see id.* ¶¶ 154–156, are insufficient because the Proposed SAC does "not allege[] any specific resulting *injury*." Order 13 (emphasis in original). As the Indiana Supreme Court has explained, there "is substantial authority" that "injury . . . does not occur upon mere exposure to (or inhalation of)" allegedly

hazardous substances. *AlliedSignal, Inc. v. Ott*, 785 N.E.2d 1068, 1075 (Ind. 2003) (addressing exposure to asbestos in the context of analyzing applicable statute of limitations); *see Morris v. Arcelormittal USA, Inc.*, No. 2:09-CV-108, 2010 WL 11680298, at *3 (N.D. Ind. Aug. 12, 2010) ("Just as exposure to asbestos doesn't necessarily result in an asbestos-related illness or disease, neither does exposure to potentially toxic air contaminants necessarily result in cancer or the other illnesses and diseases identified by the plaintiffs."); *see also Hostetler v. Johnson Controls, Inc.*, No. 3:15-CV-226, 2020 WL 5543081, at *4 (N.D. Ind. Sept. 16, 2020) ("[E]ven assuming that exposure to a single molecule of a substance may theoretically be capable of causing a cancer, the law does not provide recovery for remote, speculative, theoretical possibilities. Merely pointing to a theoretical possibility that even the most minute exposure may be able to cause a cancer fails to establish that a given individual has suffered a cognizable harm." (footnote omitted)).

Moreover, the conclusory allegations in the Proposed SAC that all Plaintiffs collectively "experienced and/or suffered an increased risk of experiencing one or more of" thirty-four injuries likewise are not sufficient. *See* Prop. SAC ¶¶ 156–157 (alleging that "[e]ach plaintiff has experienced and/or suffered an increased risk of experiencing one or more" injuries ranging from "[f]ainting," "[l]oss of [a]ppetite," and "[p]ain" to "[c]ancer" and that each plaintiff suffers "fear of illness"). As the Court already recognized, "'the threat of future harm, not yet realized, is not enough' to satisfy the damages element of a negligence action." Order 13 (quoting *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1086 (S.D. Ind. 2001)). Plaintiffs' attempt to repackage their exposure allegations by alleging an "increased risk" of harm, Prop. SAC ¶ 157, does not suffice because increased risk of harm is not a compensable injury under Indiana law. Order 13. Without allegations that an exposure-related "disease has *actually manifested itself*," Plaintiffs' negligence claim cannot be sustained. *See AlliedSignal*, 785 N.E.2d

at 1075 (emphasis added); *6232 Harrison Ave. LLC v. City of Hammond*, 2021 WL 5764857, at

*1, *4 (Ind. Ct. App. Dec. 6, 2021) (finding that "knowledge of an injury that is only *likely* to be

sustained *but by no measure has in fact yet been sustained* . . . is not an injury that is ripe for a tort

claim for damages" because Indiana law precludes "'claims solely involving *future* damages;

rather, some damage must have already begun to occur'" (emphases added) (quoting *Pflanz v.

Foster*, 888 N.E.2d 756, 758–59 (Ind. 2008))).

    Although two of the four Ramirez Plaintiffs, Minerva Ramirez and C.R., also assert in two

short paragraphs that they suffer "non-genetic environmental ovarian cancer" and "cognitive and

developmental learning disabilities," respectively, such allegations do not save their particular

claims.  *See* Prop. SAC ¶¶ 159–160.  Indeed, while Plaintiffs allege—without any factual

support—that *other* types of cancer are associated with arsenic contamination, they do not allege

an association with ovarian cancer.  *Id.* ¶ 4; *see id.* ¶ 159.  The wholly unsupported assertions by

Plaintiffs Minerva Ramirez and C.R. are inadequate because they do not plead any facts to support

a credible causal connection between their alleged injuries and Atlantic Richfield and BPWCP's

alleged predecessors' purported release of lead and arsenic.  *See id.* ¶¶ 159–160 (alleging only that

"as a result of her ingestion of lead and other Chemicals at the Site, plaintiff Minerva Ramirez

contracted non-genetic environmental ovarian cancer" and that "as a result of his ingestion of lead,

arsenic and other harmful chemical[] substances present on the Site, plaintiff CR (Minerva

Ramirez's son) was caused to suffer from cognitive and developmental learning disabilities"); *id.*

¶¶ 71, 73–74.[8]

---

[8]  As noted above, *see supra* note 4, the former Housing Complex Plaintiffs also cannot state a
claim for negligence because the Proposed SAC fails to adequately allege injury.  All but one
of the former Housing Complex Plaintiffs assert the same conclusory allegations about health
effects that they "fear" they *may or may not* be at risk of contracting at some undefined future
time.  *See* Prop. SAC ¶¶ 154–157.  Nor does Plaintiff Liduvina Espinoza's allegation that she

Accordingly, the Ramirez Plaintiffs' proposed amended count for negligence fails to state a claim and amendment is futile.

### 2.   The Ramirez Plaintiffs Still Fail to State a Claim for Negligent Infliction of Emotional Distress

The Ramirez Plaintiffs' derivative NIED claim in the Proposed SAC fails because (1) Plaintiffs have no viable negligence claim; and (2) Plaintiffs have not satisfied Indiana's direct physical impact requirement to recover damages for alleged emotional distress.

As demonstrated, the Ramirez Plaintiffs have not alleged a viable negligence claim and, therefore, their derivative proposed amended count for NIED must fail as well. *See Pickens v. N.Y. Life Ins.*, No. 2:17-CV-190, 2019 WL 4740829, at *3 (N.D. Ind. Sept. 27, 2019). The Ramirez Plaintiffs also cannot state a claim for NIED because they fail to adequately allege a direct physical impact as required by Indiana's modified-impact rule. To recover for alleged emotional distress, a plaintiff must allege that he or she suffered a *physical* impact that arose "from the plaintiff's *direct involvement* in the tortfeasor's negligent conduct." *Conder v. Wood*, 716 N.E.2d 432, 435 (Ind. 1999) (emphasis added) (explaining that the direct impact requirement "is properly understood as the requisite measure of 'direct involvement' in the incident giving rise to the emotional trauma"); *see also Atl. Coast Airlines v. Cook*, 857 N.E.2d 989, 996 (Ind. 2006). Under Indiana law, a claim for negligent infliction of emotional distress requires both physical impact and direct involvement in the negligent conduct. Indeed, Indiana's "rule envisions the plaintiff being present at the scene of the injury-producing event and, as a result, being directly impacted

---

contracted an unspecified type of cancer suffice because she only claims in a conclusory fashion that such injury allegedly resulted from her "ingestion of lead, arsenic and other harmful chemical[] substances present on the Site." *See id.* ¶ 161; p. 24. The other former Housing Complex Plaintiffs, who rely on the list of thirty-four purported health risks, likewise fail to adequately allege any connection between those risks and lead and arsenic contamination. *See id.* ¶¶ 4, 157.

in a physical manner." *Perkins v. Stesiak*, 968 N.E.2d 319, 322 (Ind. Ct. App. 2012); *see B.N.T. v. Hindson*, No. 1:09-cv-771, 2009 WL 4746343, at *2 (S.D. Ind. Dec. 7, 2009) (explaining that under the modified-impact rule, "a plaintiff must show that a defendant negligently made some sort of contact with the plaintiff").

Here, the Ramirez Plaintiffs do not—and cannot—allege that, as a result of Atlantic Richfield and BPWCP's alleged predecessors' purportedly negligent conduct, they sustained the kind of *physical* impact arising from their *direct* involvement with that conduct, as required to sustain an NIED claim. *See, e.g.*, *Jones v. Griggs*, 612 F. App'x 395, 397 (7th Cir. 2015) (affirming dismissal of NIED claim where plaintiff did not allege "that he was 'present at the scene of the injury-producing event' from which he was 'directly impacted in a physical manner'" (quoting *Perkins*, 968 N.E.2d at 322)). As the Proposed SAC acknowledges, *see* Prop. SAC ¶ 68, Atlantic Richfield and BPWCP's alleged predecessors ceased operations at the Site *decades* ago— before the Ramirez Plaintiffs even acquired their residence, let alone were exposed to any alleged toxic substances or suffered any alleged injuries. *See supra* note 6; Prop. SAC ¶¶ 84, 86; *see also* note 5. The Ramirez Plaintiffs thus cannot plausibly allege that they were present or directly involved in the allegedly negligent operations of Atlantic Richfield and BPWCP's alleged predecessors that Plaintiffs claim resulted in lead and arsenic contamination. *See, e.g.*, *B.N.T.*, 2009 WL 4746343, at *2; *Perkins*, 968 N.E.2d at 322 n.3 ("[T]he impact upon [plaintiff] was removed in both time and place from the injury-producing event.").

A tenuous and remote connection by a plaintiff to the alleged negligent conduct simply does not suffice under Indiana law. *See Perkins*, 968 N.E.2d at 322 & n.3; *see also Cook*, 857 N.E.2d at 996. Absent any reasonable temporal proximity between Atlantic Richfield and BPWCP's alleged predecessors' allegedly negligent conduct and the Ramirez Plaintiffs' alleged

exposure and "ingest[ion] [of] the harmful agents into their bodies where the harmful particulate matter [has] remained for many years and into the present," the alleged injuries that two of the Ramirez Plaintiffs now claim to suffer years after that alleged exposure and ingestion cannot satisfy the direct physical impact requirement. *See* Prop. SAC ¶¶ 167–168; *id.* ¶¶ 87, 116–117, 119; *see also Perkins*, 968 N.E.2d at 322; *Cook*, 857 N.E.2d at 991, 996, 999–1000 (explaining that it would "essentially abrogate the requirements of Indiana's modified impact rule" if plaintiffs could maintain a claim for NIED where the "'physical impact seem[s] to have been rather tenuous'" and the mental anguish "speculative" (alteration in original) (citation omitted)).

Nor can the other two Ramirez Plaintiffs' allegations of exposure and ingestion support a claim for NIED. *See* Prop. SAC ¶¶ 167–168. A direct physical impact "does not include a simple physical contact with a substance that might cause a disease at a substantially later time—where that substance, or related circumstance, threatens no harm other than that disease-related risk." *Metro-N. Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 430 (1997); *see Hostetler v. Johnson Controls Inc.*, No. 3:15-CV-226, 2021 WL 5087261, at *15 & n.11 (N.D. Ind. Nov. 2, 2021) (granting summary judgment for defendant on plaintiffs' NIED claim based on alleged exposure to a toxic substance and pointing out that the U.S. Supreme Court's "guidance [in *Buckley*] is worth noting" because the statute at issue there "mirrors common law").

Accordingly, because the Ramirez Plaintiffs cannot state a claim for NIED, amendment is futile.

## II. The Proposed Amended Strict Liability Count Does Not State a Claim

Plaintiffs' proposed amended count for strict liability based on Atlantic Richfield and BPWCP's alleged predecessors' purportedly "abnormally dangerous and ultrahazardous activity"

14

does not state a claim.  *E.g.*, Prop. SAC ¶ 123.[9]  Atlantic Richfield, BPWCP, and their alleged predecessors did not engage in any abnormally dangerous activities as a matter of law.[10]  As with the First Amended Complaint, Plaintiffs also fail to state a strict liability claim because the Proposed SAC does "not sufficiently plead[] injury."  *See* Order 15.

"Indiana courts have generally been reluctant to impose strict liability based on the abnormally dangerous activity doctrine."  *Fechtman v. U.S. Steel Corp.*, 994 N.E.2d 1243, 1248 (Ind. Ct. App. 2013) (quoting *Consol. Rail Corp. v. Allied Corp.*, 882 F.2d 254, 257 n.3 (7th Cir. 1989)); *see Joshi v. United States*, No. 3:08-cv-498, 2009 WL 2449234, at *4–6 (N.D. Ind. Aug. 6, 2009) (noting that Indiana courts "conservative[ly] appl[y]" the abnormally dangerous activity doctrine and are "reluctan[t] to expand the application of the doctrine").  Indeed, Indiana's definition of abnormally dangerous activities has not been expanded beyond two activities that are

---

[9]  Indeed, Plaintiff Willie Moore, who is also a plaintiff in *Baker v. Atlantic Richfield Co.*, No. 2:17-CV-429, 2021 WL 3726050 (N.D. Ind. Aug. 23, 2021), already conceded that the very same allegations failed to state a claim for strict liability against Atlantic Richfield and BPWCP.  *See id.* at *3 ("In briefing the instant motions, Plaintiffs concede that their complaint does not state a strict liability claim.").

[10]  The former Housing Complex Plaintiffs' proposed amended count for strict liability also fails for the same reason as their negligence claim:  Under Indiana law, a tenant cannot hold a former landowner liable for activities carried out on the land when the former landowner owned it.  *See Rolan v. Atl. Richfield Co.*, No. 1:16-CV-357, 2017 WL 3191791, at *16–17 (N.D. Ind. July 26, 2017) (finding that under Indiana law, a landowner owes no duty to subsequent owners and explaining that it would be "unreasonable" to impose a duty on landowners to maintain a condition or refrain from undertaking certain activities on land that would extend to unknown future owners); *see also supra* p. 5.  Thus, the former Housing Complex Plaintiffs cannot state a strict liability claim against Atlantic Richfield and BPWCP for activities that their alleged predecessors carried out on their *own* land.  *See* Prop. SAC ¶¶ 33, 85; *Wickens v. Shell Oil Co.*, No. 1:05-CV-645, 2006 WL 3254544, at *7 (S.D. Ind. Nov. 9, 2006) (adopting the court's reasoning in *Wellesley Hills Realty Trust v. Mobil Oil Corp.*, 747 F. Supp. 93 (D. Mass. 1990), in finding that under Indiana law a landowner owes no duty to unknown future landowners and pointing out that the *Wellesley* court dismissed a strict liability claim on that basis); *see also Wellesley*, 747 F. Supp. at 102 (dismissing strict liability claim because incidents of ownership accrued to plaintiff-buyer when defendant-seller sold the property).

impossible to perform safely:  blasting and housing wild animals in residential areas.  *See Fechtman*, 994 N.E.2d at 1250.

Under Indiana law, "whether an activity is abnormally dangerous is a question of law for the court to decide."  *Erbrich Prods. Co. v. Wills*, 509 N.E.2d 850, 857 (Ind. Ct. App. 1987). Activities that courts have found *not* to be abnormally dangerous in Indiana include storing dynamite, *see Bridges v. Ky. Stone Co.*, 425 N.E.2d 125, 127 (Ind. 1981); emptying machines during the steel manufacturing process that released carbon monoxide fumes, *Fechtman*, 994 N.E.2d at 1249–50; manufacturing household bleach using chlorine gas, *Erbrich*, 509 N.E.2d at 856–57; storing chlorine gas, *id.* at 856; and spraying a pesticide in a residence, *Dow Chem. Co. v. Ebling*, 723 N.E.2d 881, 908–09 (Ind. Ct. App. 2000), *aff'd in part, vacated in part on other grounds*, 753 N.E.2d 633 (Ind. 2001).

To determine whether an activity is abnormally dangerous, courts focus on the activities involved, not the materials at issue.  Indiana courts "analyze the defendant's activity as a whole" without "look[ing] at the abstract propensities or properties of the particular substance involved." *Fechtman*, 994 N.E.2d at 1247 (citation omitted); *see Inland Steel v. Pequignot*, 608 N.E.2d 1378, 1385 (Ind. Ct. App. 1993) (explaining that if the rule were otherwise, the "result would be intolerable" as "virtually any commercial or industrial activity involving substances which are dangerous in the abstract automatically would be deemed as abnormally dangerous" (quoting *Erbrich*, 509 N.E.2d at 856)).

Thus, for example, courts consistently decline to impose strict liability based on the dangerousness of the substances involved.  *See, e.g.*, *Dow Chem. Co.*, 723 N.E.2d at 908–09 ("[S]trict liability attaches only to ultra-hazardous or abnormally dangerous activities and not to ultra-hazardous or abnormally dangerous materials."); *G.J. Leasing Co. v. Union Elec. Co.*, 854

F. Supp. 539, 568 (S.D. Ill. 1994) ("The fact that the building may have had asbestos, PCBs or any other hazardous substance in it does not compel a different result because strict liability attaches only to abnormally dangerous activities, not substances."), *aff'd*, 54 F.3d 379 (7th Cir. 1995).

Here, the essence of Plaintiffs' proposed amended strict liability claim is that the alleged presence of "hazardous substances such as lead and arsenic" equates to the performance of an abnormally dangerous activity. *See* Prop. SAC ¶¶ 71, 87. But, as the case law makes clear, allegations about the presence of harmful substances do not state a claim for strict liability. Nor can Plaintiffs state a strict liability claim based on the alleged "manufacture, processing, storage, and use of materials resulting in the release of lead and other hazardous particles." *Id.* ¶ 123.[11] As courts routinely hold, strict liability does not attach to the manufacture, storage, use, or disposal of hazardous wastes because such materials can be handled while exercising due care. *See, e.g.*, *Fechtman*, 994 N.E.2d at 1249–50 (releasing carbon monoxide gas when operating and emptying machines during the steel manufacturing process was not subject to strict liability because "through the exercise of reasonable care, the risk can be minimized if not wholly eliminated"); *Erbrich*, 509 N.E.2d at 856–57 & 857 n.3 (finding that using chlorine gas to manufacture bleach was not abnormally dangerous because exercising due care negated the risk of exposure to chlorine gas).

The Proposed SAC also contains no facts to suggest that the activities undertaken by Atlantic Richfield and BPWCP's alleged predecessors were abnormally dangerous—nor can it. *See Read v. Corning Inc.*, 351 F. Supp. 3d 342, 357–58 (W.D.N.Y. 2018) (dismissing strict liability claim based on disposing hazardous substances because nothing supported an inference that

---

[11] Indeed, Plaintiffs previously acknowledged that manufacturing involving purportedly hazardous substances is not subject to strict liability. *See* Dkt. 131, Pls.' Resp. Opp'n to Mot. to Dismiss 13–14 ("For example, manufacturing might aim to make widgets, and use toxic chemicals in the process, but then (presumably) take care to avoid and minimize the release of those chemicals.").

disposing of such materials was abnormally dangerous).  Nor is Plaintiffs' allegation reciting the factors set forth in section 520 of the Restatement (Second) of Torts, *see* Prop. SAC ¶ 124, sufficient.  *See, e.g.*, *Bd. of Cnty. Comm'rs v. Brown Grp. Retail, Inc.*, 598 F. Supp. 2d 1185, 1196 (D. Colo. 2009) ("Plaintiff merely recites the factors a court should consider without alleging specific facts in support.  Such 'statements' are not statements of fact which must be assumed true for purposes of this motion, but are instead legal conclusions.").

### III.    Medical Monitoring Is Not a Cause of Action

Plaintiffs' proposed amendment to assert an independent cause of action for medical monitoring, *see* Prop. SAC ¶¶ 113, 116–119, 157, 159–161, 178–184, is futile because "Indiana does not recognize medical monitoring as a cause of action."  *Johnson v. Abbott Lab'ys*, No. 06C01-0203-PL-89, 2004 WL 3245947, at *6 (Ind. Cir. Ct. Dec. 31, 2004);[12] *Hunt v. Am. Wood Preservers Inst.*, No. IP 02-0389, 2002 WL 34447541, at *1 (S.D. Ind. July 31, 2002) (granting motion to dismiss "Plaintiffs' medical monitoring claim, as such a claim is not cognizable in the State of Indiana").  Plaintiffs cite no authority in their Motion to the contrary.  Indeed, Plaintiffs' Motion does not address the proposed medical monitoring claim *at all*.  Accordingly, the proposed medical monitoring cause of action is futile as to all Plaintiffs.[13]

---

[12] Atlantic Richfield and BPWCP cite *Johnson*, an unpublished Indiana circuit court decision, because Atlantic Richfield and BPWCP are not aware of other Indiana state court cases discussing the viability of standalone medical monitoring claims.

[13] Plaintiffs' proposed amendment for medical monitoring *damages* in connection with their negligence claim—which Plaintiffs do not address in their Motion—likewise is futile because the Proposed SAC fails to allege a viable negligence claim.  *See supra* pp. 4–12.  In any event, the vague allegations in the Proposed SAC do not establish that Plaintiffs are entitled to such relief.  *See* Prop. SAC ¶ 161.  Plaintiffs fail to allege any facts regarding the timing or duration of their alleged exposure to any toxins; the causal relationship between such exposure and the thirty-four illnesses for which they claim they are at increased risk; the kind of medical monitoring they allegedly require; or even that early detection tests exist for the illnesses they identify.  *Cf. Callihan v. Surnaik Holdings of WV, LLC*, No. 2:17-CV-04386, 2018 WL 6313012, at *7 (S.D.W. Va. Dec. 3, 2018) (finding that plaintiffs failed to plausibly allege "that

## IV.   The Statute of Limitations Bars the Adult Plaintiffs' Proposed Amended Claims

Plaintiffs' Motion also must be denied because the allegations asserted by all Plaintiffs in their complaint currently pending against government entities in Lake Superior Court[14] establish that the adult Plaintiffs' tort counts are barred by the statute of limitations.[15]   The proposed amended counts for negligence, NIED, strict liability, and medical monitoring seek relief for alleged personal injury.  *See* Prop. SAC ¶¶ 113–114, 119, 132, 154, 156–157, 161, 171, 176–178.[16] Thus, Indiana's two-year statute of limitations applies to these claims.  *See* Ind. Code § 34-11-2-4(a)(1).  The counts in Plaintiffs' Proposed SAC, however, arose long before July 6, 2016 (i.e., two years before this lawsuit was filed, *see* Compl., July 6, 2018).

The discovery rule governs determination of when a tort claim accrues for purposes of the statute of limitations.  *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1280 (Ind.

---

medical monitoring 'expenses are necessary and reasonably certain to be incurred'" where they did not "connect the ingestion of the [allegedly toxic] substances with a likely risk of developing disease" and "plead no facts to demonstrate that their likelihood of developing cancer necessitates additional screening that would not be recommended absent their exposure" (citation omitted)).  Moreover, Plaintiffs' proposed amendments seeking medical monitoring— which are based on exactly the same harm alleged in their earlier complaints—are unduly delayed and would substantially prejudice Atlantic Richfield and BPWCP.  *See, e.g.*, *Pabst Brewing Co. v. Corrao*, 176 F.R.D. 552, 559 (E.D. Wis. 1997) ("Leave to amend a pleading may be properly denied if the moving party knew the facts on which the claims sought to be added were based at the time the original pleading was filed and there is no excuse for his failure to plead them."), *aff'd*, 161 F.3d 434 (7th Cir. 1998).

[14]  The Court already took judicial notice of the complaint filed by all Plaintiffs here against government entities, including the City of East Chicago and the Indiana Department of Environmental Management ("IDEM").  *See* Order 4 (granting E. I. du Pont de Nemours and Company and The Chemours Company's request for judicial notice); Dkt. 115-3, Compl. ¶¶ 13–19, *Adams v. City of East Chicago*, Cause No. 45D01-1809-CT-000526 (Lake Super. Ct. filed July 9, 2018) (hereinafter "*Adams* Compl.").  In that action, as in this one, Plaintiffs seek to recover damages for claims arising from alleged contamination at the Site.

[15]  Because the minor Plaintiffs' claims are tolled until they reach the age of majority, *see* Ind. Code §§ 1-1-4-5(a)(24), 34-11-6-1, Atlantic Richfield and BPWCP's arguments based on the statute of limitations only apply to the adult Plaintiffs' tort claims.

[16]  The claims in the Proposed SAC sound in personal injury, despite Plaintiffs' unsupported allegation about their purported loss of use and enjoyment of their homes.  *See* Prop. SAC ¶ 158.

2009).  "Under Indiana's discovery rule, a cause of action accrues, and the limitation period begins to run, when a claimant knows or *in the exercise of ordinary diligence* should have known of the injury." *Id.* (emphasis added).  "'Ordinary diligence' requires the injured party to 'act with some promptness where the acts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist.'"  *Ruckelshaus v. Cowan*, 963 F.3d 641, 644 (7th Cir. 2020) (quoting *Myers v. Maxson*, 51 N.E.3d 1267, 1276 (Ind. Ct. App. 2016)).

"For an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred."  *Cooper*, 899 N.E.2d at 1280.  Indiana courts "apply an *objective*," rather than a subjective, standard to determine when an action accrues.  *Schuchman/Samberg Invs., Inc. v. Hoosier Penn Oil Co.*, 58 N.E.3d 241, 251 (Ind. Ct. App. 2016) (emphasis added).  Determining when a claim accrued is a question of law, *Cooper*, 899 N.E.2d at 1280, and is appropriate to decide based on Plaintiffs' Proposed SAC.  *See Refined Metals Corp. v. NL Indus., Inc.*, No. 1:19-CV-4578, 2020 WL 1448880, at *3 (S.D. Ind. Mar. 25, 2020) (finding that the case was untimely at the pleading stage because "all of the relevant dates are contained within the Complaint or the other documents that the Court may consider," so it was "susceptible to a statute of limitations analysis at the motion to dismiss stage").

Here, the allegations in the Proposed SAC and those in the complaint in Plaintiffs' action pending in Lake Superior Court show that it is indisputable that Plaintiffs have known—or reasonably should have known—about the facts underlying their personal injury claims at least since before July 6, 2016.  It has been well known, as Plaintiffs allege, that "[f]or much of the twentieth century, industries operated near the intersection of 151st Street and Kennedy Avenue in East Chicago, Indiana (the 'Site Center'), and northwest of the Site Center."  *Adams* Compl. ¶ 3.

The Site was placed on the National Priorities List in 2009, Prop. SAC ¶¶ 8, 92, which means "that the area warranted remedial action." *Adams* Compl. ¶ 25.

Since then, as Plaintiffs allege, "the community has held hundreds of meetings to address the remediation process." Prop. SAC ¶ 10. And according to Plaintiff Minerva Ramirez, "2011 emergency soil removal" efforts took place "around her home on the 4900 block of Grasselli in East Chicago." *Adams* Compl. ¶ 43; *see id.* ¶ 42 ("In 2011, contaminated soil was removed from more residential properties at the Site on an emergency basis."); *id.* ¶ 47 (alleging that plaintiff Minerva "RAMIREZ and others observed City [of East Chicago] and [East Chicago Housing Authority] personnel work[] . . . with EPA and IDEM personnel on testing for and remediation of toxic contamination"). After the soil in the yard of her property was tested, she was contacted by EPA, IDEM, and City of East Chicago officials, who "suggested that the soil in her yard should be removed and remediated." *Id.* ¶ 44. Those meetings and the efforts to test and remediate alleged contamination at properties located within the Site, including the Ramirez Plaintiffs' property, occurred before July 6, 2016—two years before Plaintiffs filed this action.

Given Plaintiffs' allegations about alleged contamination at properties located within the Site, each Plaintiff had notice that the alleged contamination may have impacted their rights long before July 6, 2016. Indeed, that any resident of the Site knew of *any* issue relating to the alleged presence of lead or arsenic at that time renders the counts in the proposed amendment time-barred. As courts routinely hold, the mere *testing* of property for contamination sufficiently puts a party on notice to determine the date of accrual. *See Schuchman/Samberg Invs.*, 58 N.E.3d at 251–52 (holding that claims were untimely as of the time that plaintiff "admitted that '*[t]esting* should have been done'" because he "had knowledge sufficient to trigger its duty to inquire further in order to determine whether a legal wrong had occurred" (alteration in original) (emphasis added)

(citation omitted)); *Martin Oil Mktg. Ltd. v. Katzioris*, 908 N.E.2d 1183, 1189 (Ind. Ct. App. 2009) (finding that as of the time that plaintiff granted permission "to *test* for contamination and to conduct remediation efforts if necessary," he "possessed sufficient information to cause a reasonable person to inquire further in order to determine whether he had suffered a legal wrong" (emphasis added)).[17]   Accordingly, all counts in the Proposed SAC are time-barred.

## V.   Plaintiffs Fail to Allege Substantive Allegations Against BPWCP

As demonstrated above, denial of Plaintiffs' Motion is warranted because the Proposed SAC is futile as to both Atlantic Richfield and BPWCP.  Plaintiffs' Motion must be denied as to BPWCP for the additional reason that the Proposed SAC lacks any substantive allegations against BPWCP.

A complaint cannot state a plausible claim for relief against a defendant where there is a "total absence of factual allegations as to a defendant's conduct giving rise to liability."  *DirectBuy, Inc. v. Giacchi*, No. 2:09CV110, 2012 WL 2407698, at *4 (N.D. Ind. June 25, 2012) (dismissing counterclaims against a party with prejudice because the single factual allegation mentioning the party did "not appear to support any theory of liability against [that party]").  The single allegation that purports to allege BPWCP's corporate background is insufficient to state any viable claims against BPWCP.  *See* Prop. SAC ¶ 16.  Thus, Plaintiffs' proposed amendment against BPWCP is futile for this reason as well.

---

[17]  Moreover, because Indiana courts apply an objective standard to determine when a claim began to accrue, any attempt by Plaintiffs to disclaim personal knowledge about possible contamination cannot save the counts in their proposed amendment.  *See Schuchman/Samberg Invs.*, 58 N.E.3d at 251–52 (dismissing claim as time-barred despite plaintiff's assertion that he did not subjectively know of the claim during the limitations period).

## CONCLUSION

For these reasons, Atlantic Richfield and BPWCP request that the Court deny Plaintiffs'

Motion.

Dated:  January 12, 2022                              Respectfully submitted,


                                                      *s*/Diana E. Reiter
                                                      Diana E. Reiter
                                                      Nancy G. Milburn
                                                      Arnold & Porter Kaye Scholer LLP
                                                      250 West 55th Street
                                                      New York, NY 10019-9710
                                                      (212) 836-8000
                                                      Diana.Reiter@arnoldporter.com
                                                      Nancy.Milburn@arnoldporter.com

                                                      Sean O. Morris
                                                      Arnold & Porter Kaye Scholer LLP
                                                      777 South Figueroa Street, 44th Floor
                                                      Los Angeles, CA 90017-5844
                                                      (213) 243-4000
                                                      Sean.Morris@arnoldporter.com

                                                      Kathleen A. DeLaney, Atty. No. 18604-49
                                                      DeLaney & DeLaney LLC
                                                      3646 Washington Boulevard
                                                      Indianapolis, IN 46205-3560
                                                      (317) 920-0400
                                                      Kathleen@delaneylaw.net

                                                      *Counsel for Defendants Atlantic Richfield*
                                                      *Company and BP West Coast Products LLC*