# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

DASHEENA ADAMS, *et al.*,　　　　　)
　　　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　　)　CAUSE NO.:  2:18-CV-375-JVB-JPK
　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
ATLANTIC RICHFIELD COMPANY, *et al.*,　)
　　　　　Defendants.　　　　　　　)

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Leave to File Second Amended Complaint [DE 162], and Defendant DuPont's Request for Judicial Notice [DE 168]. On October 15, 2021, presiding District Judge Joseph S. Van Bokkelen granted Defendants' motion to dismiss, but permitted Plaintiffs to file a motion to amend the complaint. Oral argument was heard on April 28, 2022. For the reasons discussed below, the motion to amend is granted for relief different than requested, and Plaintiffs will be permitted to pursue some of their proposed claims.

## I.   FACTUAL BACKGROUND

The proposed amended complaint names 10 defendants[1]: Tesoro Corporation; BP Amoco PLC; BP West Coast Products, LLC; E.I. Dupont de Nemours and Company ("DuPont"); the Chemours Company ("Chemours"); U.S. Smelter and Lead Refinery, Inc. ("U.S. Smelter"); Hammond Group, Inc.; Hammond Lead Products, LLC; Halstab, LLC; and Halox, LLC (collectively, the "Hammond Defendants"). The general allegations are similar to those in the prior complaint. Defendants allegedly owned or purchased lead refineries and other manufacturing facilities in the Calumet neighborhood of East Chicago, Indiana. The 84 plaintiffs were residents

---

[1] There are 10 defendants with allegations against them. Atlantic Richfield Company, a defendant in the prior complaint, is listed in the case caption of the proposed amended complaint, but there are no claims pled against it. [*See* DE 162-1, ¶¶ 14-31, 39-83].

of the nearby West Calumet Housing Complex (the "Complex"). Plaintiffs allege that, at various times between 1920 and 1985, Defendants introduced contaminants (including lead, cadmium, antimony, and mercury) into the air, soil, and/or groundwater. This caused Plaintiffs to suffer an increased risk of a variety of illnesses, as well as severe emotional distress. Some have already developed illnesses allegedly caused by the contaminants.

Defendants failed to warn Plaintiffs about the contamination. Plaintiffs were unaware of the contamination and had no reason to know about it until July 25, 2016, when East Chicago Mayor Anthony Copeland sent a letter to the Complex's residents, informing them that the ground within the Complex was highly contaminated with lead and arsenic. The City of East Chicago told the residents that they had to move within 30 to 60 days.

In their prior complaint [DE 59], Plaintiffs brought claims of strict liability, negligence, nuisance, trespass, intentional infliction of emotional distress, and negligent infliction of emotional distress. In dismissing that complaint, Judge Van Bokkelen determined as follows:

- Based on Plaintiffs' allegations, they did not learn about the danger posed by the contamination until July 25, 2016, and therefore the lawsuit would not be dismissed for failure to file within the applicable limitations period;

- With regard to the negligence claims, the complaint plausibly alleged that the defendants owed a duty to protect neighboring properties, including the Complex, from contamination[2];

- Although Plaintiffs had alleged they were exposed to contaminants, they had not sufficiently alleged injury, as was required to sustain negligence and strict liability claims;

---

[2] This finding did not apply to Atlantic Richfield Company, but encompasses all defendants named in the proposed amended complaint. *See* Note 1.

- Plaintiffs had not sufficiently alleged that Defendants acted with the intent to harm Plaintiffs emotionally, as required for a claim of intentional infliction of emotional distress.

[DE 157]. Judge Van Bokkelen granted Plaintiffs until December 15, 2021, to file this motion to amend the complaint.

Plaintiffs now seek to bring claims of strict liability, negligence, negligent infliction of emotional distress, and a separate cause of action for medical monitoring, against all defendants, as well as a nuisance claim against Defendant DuPont. They argue that they have cured the deficiencies in their previous claims by "flesh[ing] out their damages and more fully stat[ing] the specific harms" they suffered. [DE 162].

## II.  ANALYSIS

When a party seeks leave to amend a complaint, the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Seventh Circuit encourages granting one chance to amend after the dismissal of a complaint, to ensure that cases are resolved on the merits rather than technicalities of pleading: "[I]t is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

Leave to amend may be denied "where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice . . . or futility of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991). "Futile repleadings include restating the same facts using different language, reasserting claims previously determined, and the inability to survive a motion to dismiss."

*Naperville Smart Meter Awareness v. City of Naperville*, 114 F. Supp. 3d 606, 610 (N.D. Ill. 2015) (citing *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014). The Court must therefore consider whether the facts alleged are sufficient to state a claim under Indiana law. "Where state law provides the rule of decision, the federal courts must predict how the highest court of the state would decide the case if presented with the case today." *Klunk v. Cnty. of St. Joseph*, 170 F.3d 772, 777 (7th Cir. 1999). Decisions of the Indiana Court of Appeals provide a "strong indication of how [the Indiana] Supreme Court would decide a similar question, unless there is a persuasive reason to believe otherwise." *Gen. Accident Ins. Co. of Am. v. Gonzales*, 86 F.3d 673, 675 (7th Cir. 1996).

Nonetheless, "a court should deny leave to amend only if it is certain that amendment would be futile or otherwise unwarranted." *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). In summary, the Court will attempt to discern whether any or all of Plaintiffs' claims would survive a motion to dismiss. But unless the Court is "certain" of dismissal, the proposed amendment will not be denied as futile. *See also Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("Unless it is certain from the face of the complaint that any amendment would be futile . . . [the] court should grant leave to amend after granting a motion to dismiss.").

## A.    Request for Judicial Notice

Defendants DuPont and Chemours ask the Court to take judicial notice of an August 24, 2021 EPA report pertaining to the site, and a case management order in the state court case of *Adams, et al. v. City of East Chi.*, Cause No. 45D01-1809-CT-000526 (Lake Superior Ct.). As

Judge Van Bokkelen explained in addressing previous requests, "[p]ublic records—such as court orders, agency decisions, administrative body reports, and government websites—are appropriate subjects of judicial notice." [DE 157 at 2] (citing *In re Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (Easterbrook, J., in chambers) (court orders), *Opoka v. I.N.S.*, 94 F.3d 392, 394-95 (7th Cir. 1996) (agency decisions), *et al.*).

No party has filed a response or objection to this request. The Court takes judicial notice of the fact "that the documents exist [and that] they say what they say." *Our Country Home Enters. v. Comm'r of Internal Revenue*, 855 F.3d 773, 782 n.1 (7th Cir. 2017). However, this does not establish any fact therein that is subject to reasonable dispute. Specifically: DuPont and Chemours cite the EPA report for the premise that four of the plaintiffs currently live in an area of the site that "the EPA has remediated." [DE 167 at 2]. The cited portion of the report reads: "The remedy at OU1[3] is expected to be protective of human health and the environment *upon completion*. In the interim, remedial activities *that have been completed to date* in OU1 have adequately addressed all exposure pathways that could result in unacceptable risks in these areas." [DE 167-1 at 20] (emphasis added). The statement is unclear as to what the current risk is for a resident of that area. In fact, the report indicates that the remediated area OU1 encompasses the soil, but not the groundwater. *See id*. at 5 (further noting that "hazardous substances, pollutants, or contaminants remain at the Site above levels that allow for unlimited use and unrestricted exposure"), 7, 15. To the extent DuPont and Chemours argue that completion of interim remedial activities precludes any current, compensable risk from contamination, that is not established by the Court taking judicial notice of the report. *See* Fed. R. Evid. 201(b)(2) (judicial notice of a fact is appropriate if it can be "readily determined" from the source).

---

[3] DuPont and Chemours assert that the four plaintiffs' residence(s) are within the area known as "OU1."

**B.      Prejudice/Undue Delay/Bad Faith**

Several Defendants object to the proposed amendment on the grounds of prejudice or undue delay. Although the passage of time can support denial of a motion to amend, "[d]elay must be coupled with some other reason. Typically [that is] . . . prejudice to the non-moving party." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (quoting *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004)). Courts consider factors such as the number of previous amendments, the reason for the delay, how long the plaintiff knew about any newly pled facts, and the procedural posture of the case. *Bennett v. Crane*, No. 1:16-CV-00423-TLS-SLC, 2019 WL 1785533, at *2 (N.D. Ind. Apr. 24, 2019).

Turning first to the timeline: This case has been pending since July 2018, but the Court does not believe Plaintiffs are intentionally delaying the litigation. Since the case was filed in state court, there has been a removal [DE 1], a contested motion to remand [DE 60], and an agreed stay of roughly nine months while a related case was heard on appeal [DE 92, 107], followed by the previous round of motions to dismiss, which were resolved in October 2021 [DE 157]. The Court granted Plaintiffs until December 15, 2021, to seek leave to amend the complaint, and this motion was timely filed. This would be their second amended complaint, and the first amendment was made simply to accommodate the different pleading standards imposed by Defendants' removal of this case to federal court.

Some defendants argue that the facts of the case have not changed, so Plaintiffs should have pled any "new" details in their previous complaint, or when the motions to dismiss apprised them of the inadequacies. While that would have sped things up, "a formal motion for leave to amend was not necessary at the Rule 12(b)(6) stage, and [Plaintiffs were] entitled to wait and see

6

if any pleading problems the court might find could be corrected."[4] *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). The complaint implicates several difficult or unsettled legal issues, and consistent with Seventh Circuit precedent favoring the resolution of cases on the merits, Judge Van Bokkelen explicitly directed that Plaintiffs should be allowed to ask for another chance to amend their complaint. Having reviewed the record, the Court does not believe that Plaintiffs were sandbagging[5], or that the proposed amendment reflects a lack of diligence warranting denial of the motion to amend. *Cf. McCoy*, 760 F.3d at 687 (denying leave to amend where "the unexplained delay looks more like procedural gamesmanship than legitimate ignorance or oversight").

## C.    Negligence

Plaintiffs once again attempt to bring negligence claims based on Defendants' failure to protect from contamination the land where plaintiffs would eventually live. "Prevailing on a negligence claim requires fulfillment of three elements: 1) duty owed to plaintiff by the defendant; 2) breach of duty by allowing conduct to fall below the applicable standard of care; and 3) compensable injury proximately caused by defendant's breach of duty." *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017). Judge Van Bokkelen found that Plaintiffs had adequately alleged duty as to the defendants remaining in this action. He

---

[4] DuPont and Chemours cite *Swoope v. Gary Community School Corp.*, No. 2:10 CV 423, 2012 WL 523710, at *3 (N.D. Ind. Feb. 15, 2012), finding in a similar situation that "[u]nder the amended version of [Fed. R. Civ. P. 15(a)], [Swoope] does not have the right to sit back, let the Court explain the shortcomings of [his] Complaint, and then take a mulligan and amend [his] Complaint." The court was correctly describing the rule: this is not a circumstance under which Plaintiffs have the *right* to an amendment (Rule 15(a)(1)), but rather, one in which they can amend only with the other party's consent or "when justice so requires." (Rule 15(a)(2)).

[5] The Court disagrees with the Hammond Defendants' argument that the proposed amendment was offered in bad faith. [DE 155 at 13-14]. These defendants assert, correctly, that Plaintiffs only attempted to bring a medical monitoring claim once they were told their negligence claims could not proceed. Although it may be bad strategy, it is not necessarily bad faith to pursue a new theory of relief when the initial theory is foreclosed. It appears to the Court that Plaintiffs are simply looking for any legal mechanism through which to be compensated for their alleged exposure to potentially harmful contaminants.

did not make specific findings as to breach, but found that Plaintiffs' failure to adequately allege injury was dispositive as to their negligence claims.

DuPont and Chemours contest the issue of breach, arguing that Plaintiffs "still do not allege facts showing [those defendants'] conduct did not conform to the standard of care." [DE 167 at 11]. As Judge Van Bokkelen explained, a property owner has a "duty to exercise reasonable care when handling [] hazardous materials in order to prevent contamination from leaving its property." [DE 157 at 12], citing *Rolan v. Atl. Richfield Co.*, No. 1:16-CV-357, 2017 WL 3191791, at *17 (N.D. Ind. July 26, 2017). In their proposed complaint, Plaintiffs allege that DuPont "generated airborne emissions of contaminants, including lead and arsenic, from plant stacks and also leaked and/or spilled contaminants into the surrounding area, contaminating plaintiffs' [properties]," and now "fail[s] to control hazardous substances on its property, including but not limited to arsenic, cadmium, lead, and zinc which leak and/or spill into the surrounding area." [DE 162-1, ¶¶ 64, 65, 150]. Chemours is allegedly a subsidiary and successor in interest to DuPont's environmental liabilities. [*Id.* ¶ 21].

The allegations that DuPont "fail[s] to control" the substances, by allowing them to leak or spill, support a plausible inference that it failed to exercise reasonable care to prevent contamination from leaving the property. A technical explanation of how the contaminants left, or the measures DuPont should have taken, is not necessary to state a claim. *Zimmerman*, 25 F.4th at 493 ("[F]ederal pleading standards do not 'demand that complaints contain all legal elements (or factors) plus facts corresponding to each.' . . . The cornerstone at the motion to dismiss stage remains . . . to draw all reasonable inferences in the plaintiff's favor.") (quoting *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017)).

Because duty, breach, and causation are properly alleged, Plaintiffs' negligence claims depend on whether their revised allegations state a cognizable injury. Plaintiffs allege that because of the chemical contamination, "[e]ach plaintiff has experienced and/or suffered an increased risk of experiencing" any of 35 different injuries. [DE 162-1, ¶ 113]. However, only three of the 84 plaintiffs allege a present physical injury. [*See id*. ¶¶ 116-118]. The Court first considers the 81 plaintiffs who did not plead a present injury, before addressing the remaining three plaintiffs.

### 1.    Plaintiffs with no present physical injury

Judge Van Bokkelen found that Plaintiffs had "alleged *exposure* to environmental contaminants, but [not] any specific resulting *injury*. '[T]he threat of future harm, not yet realized, is not enough' to satisfy the damages element of a negligence action." (emphasis in original) (quoting *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 155 F. Supp. 2d 1069, 1086 (S.D. Ind. 2001)). Plaintiffs essentially argue that the physical impact of the exposure to contaminants, and attendant risk of future injury, is sufficient to plead a negligence claim.

It was not necessary for Judge Van Bokkelen to specifically address this question in his earlier rulings, and the Court is not aware of an Indiana case squarely addressing it. However, the Court is informed by similar cases in the asbestos context. Even when asbestos exposure results in physical change, or so-called "subclinical injury" to the affected person, a cause of action accrues only when a current, diagnosable illness develops. *See AlliedSignal, Inc. v. Ott*, 785 N.E.2d 1068, 1075 (Ind. 2003) (limited on other grounds by *Myers v. Crouse-Hinds Div. of Cooper Indus., Inc.*, 53 N.E.3d 1160 (Ind. 2016)); *Jurich v. John Crane, Inc.*, 824 N.E.2d 777, 782 (Ind. Ct. App. 2005). These cases are not exactly on point because they are guided by Indiana's products liability statute of repose. However, the Indiana Supreme Court approvingly cited cases in other jurisdictions holding that mere physiological changes, or subclinical injury, were not compensable in tort law.

*See AlliedSignal*, 785 N.E.2d at 1075 n. 8 (citing, *e.g.*, *Simmons v. Pacor, Inc.*, 543 Pa. 664, (1996);

*Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 542 (Me. 1986)); *Ott v. AlliedSignal, Inc.*, 827

N.E.2d 1144, 1155-56 (Ind. Ct. App. 2005) (discussing the cited cases). This is a strong indicator

of the Indiana Supreme Court's view of the requirement of present physical injury in a tort case.

*See Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 638-39 (7th Cir. 2007) (citing *AlliedSignal* for

the premise that exposure "do[es] not give rise to a legally cognizable injury," to predict how the

Indiana Supreme Court would decide damages for a negligence claim); *Morris v. Arcelormittal*

*USA, Inc.*, No. 2:09-CV-108-RLM-PRC, 2010 WL 11680298, at *3 (N.D. Ind. Aug. 12, 2010)

(addressing a nuisance claim: "Just as exposure to asbestos doesn't necessarily result in an

asbestos-related illness or disease, neither does exposure to allegedly toxic air contaminants

necessarily result in cancer or the other illnesses and diseases identified by the plaintiffs.").

Although not binding here, the Court is further persuaded by the reasoning in cases from the

supreme courts of Illinois, Michigan, and Kentucky, reaching similar conclusions based on general

principles of tort law.[6] Plaintiffs do not present the Court with any contrary authority on this point,

from any jurisdiction.

---

[6] In *Berry v. City of Chicago*, 181 N.E.3d 679 (Ill. 2020), plaintiffs alleged that the city's negligent conduct "placed them at increased risk of having lead in their water supplies and, therefore, at increased risk of having lead enter their bodies and of suffering lead poisoning." There was no allegation of present physical injury. The court observed: "Almost anything that a person does while living and working in the world can create a risk of harm to others. The long-standing and primary purpose of tort law is not to punish or deter the creation of this risk but rather to compensate victims when the creation of risk tortiously manifests into harm. . . . A person may pursue a cause of action in tort once harm occurs. Given this fact, there is little justification for imposing civil liability on one who only creates a risk of harm to others." 181 N.E.3d at 688 (citing Oliver Wendell Holmes Jr., The Common Law 144 (1881)).

In *Henry v. Dow Chemical Co.*, 701 N.W.2d 684 (Mich. 2005), the court considered whether a class of plaintiffs, with no present physical injury, could sustain a negligence claim based on their exposure to dioxin. The plaintiffs expressly did not seek "compensation for physical injury or for the enhanced risk of future physical injury" but sought a medical monitoring program as damages. *Id.* at 689 n. 4. The court held that the plaintiffs needed a present physical injury to proceed, and the additional expense that the plaintiffs would incur from medical monitoring could not itself sustain a negligence claim. The court explained that while medical monitoring could be *damages* in a properly-pled negligence claim, it was not an *injury*. *Id.* at 689-691 ("Because plaintiffs have not alleged a present physical injury, but rather,

Plaintiffs seek to analogize this case to *Alvarez v. Atlantic Richfield et al.*, 2:17-cv-00414-JVB-JPK, where the Court permitted a group of property owners in the Calumet neighborhood to proceed against companies who allegedly contaminated the properties. Their complaint included detailed claims of the damage suffered by each plaintiff, including diminution in market value of the properties they owned, and the cost of remediating the properties. *See* 2:17-cv-00414-JVB-JPK, [DE 1 ¶¶ 64-101, 168-210]. Unlike in this case, the *Alvarez* plaintiffs did not seek to recover for potential future injuries, although some sought emotional distress damages based on their fear of exacerbating existing issues. [*See id.* ¶¶ 226-231].

Although the plaintiffs in this case couch their injury allegations in general language that overlaps with *Alvarez*, such as "physical, mental, and emotional harm" and "loss of use and quiet enjoyment," they made the same general allegations in their prior complaint [DE 59 ¶¶ 113-14], and Judge Van Bokkelen rejected them as insufficient. And the *Alvarez* claims were not premised on the probability that currently healthy people would become sick in the future. As to the negligence claims of the plaintiffs not suffering a present physical injury, the Court finds that the proposed amendment is futile, and those claims will not be permitted to proceed.

In so finding, the Court remains mindful of the Seventh Circuit's direction that leave to amend be liberally granted to cure procedural deficiencies. If it seemed that Plaintiffs had sustained present injuries and had not yet pled them due to an honest belief that it was not necessary, the situation might be different. However, Judge Van Bokkelen's opinion clearly explained that

---

"bare" damages, the medical expenses plaintiffs claim to have suffered (and will suffer in the future) are not compensable.") (citing Cooley on Torts (4th ed., § 32); Prosser & Keeton, Torts (5th ed., § 30)).

In *Wood v. Wyeth-Ayerst Laboratories, Div. of Am. Home Prod.*, 82 S.W.3d 849 (Ky. 2002); the court held that exposure "to an agent that had the potential to result in serious future medical consequences, but which had not produced actual physical harm at the time of the suit," could not sustain a negligence claim. *Id.* at 854-55 ("'The words 'physical harm' are used to denote physical impairment of the human body, or of tangible property' . . . [the plaintiff's] body has not yet been impaired by her ingestion" of the contaminant) (quoting Restatement (Second) of Torts, § 7, comment e (1965)).

Plaintiffs needed to allege injury, not just exposure, and granted them ample time to do so. Given how long Plaintiffs have had to gather evidence of injury, it appears that these plaintiffs have not sustained present physical injuries from the contamination, or cannot support such allegations in their complaint. The deficiencies are substantive, not procedural, so there is no cause to allow the plaintiffs who have not alleged a physical injury to re-plead based on the same theory.

### 2.      Plaintiffs with a present physical injury

Three of the 84 plaintiffs allege a present physical injury caused by the contamination: Minerva Ramirez (non-genetic ovarian cancer), C.R. (cognitive and developmental learning disabilities), and Liduvina Espinoza (cancer). [DE 162-1, ¶¶ 159-161]. These plaintiffs have adequately alleged injury, and can be permitted to proceed with negligence claims.

Several defendants argue that these plaintiffs do not plead a sufficient causal connection between the alleged breach and the injuries. For example, DuPont and Chemours argue that there are no dates and duration of exposure alleged for these plaintiffs.[7] Those could be relevant details for proving causation, but they are not required at the pleading stage. *See Rolan*, 2017 WL 3191791 at *18 (causation issue "requires a more factually intensive inquiry" than appropriate at the motion to dismiss stage). Plaintiffs alleged that they were exposed to the contaminants at dangerous levels [DE 162-1 ¶ 104], and listed 35 illnesses for which they were at "increased risk" due to the exposure, including the injuries allegedly suffered by these three plaintiffs [¶ 113 (including cancer, learning and speech impairments, and "decreased IQ and mental aptitude")]. Although Plaintiffs' allegations could have been clearer, they support a plausible inference that these three plaintiffs developed these illnesses at least in part because of the exposure to contaminants.

---

[7] Those defendants also argue that the plaintiffs never stated they developed the illnesses *after* exposure, but Plaintiffs did allege that they contracted the illnesses "*as a result of* [their] ingestion of lead and other harmful Chemicals at the Site." [DE 162-1, ¶¶ 159-161) (emphasis added).

D.      **Negligent Inflicion of Emotional Distress**

Plaintiffs also attempt to re-plead their negligent inflicion of emotional distress ("NIED")

claim. Judge Van Bokkelen dismissed the claim, finding that because Plaintiffs did not plead an

injury sufficient to sustain a negligence claim, they could not bring a separate NIED claim, even

if they alleged emotional distress as an injury. In other words, there can be no NIED claim unless

accompanied by a properly pled, "ordinary" negligence claim. *See* [DE 157 at 9]; *Spangler v.*

*Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011) ("We have never permitted . . . an action seeking

damages for emotional distress predicated upon a breach of an alleged duty not to inflict emotional

injury on another. Such independent, stand-alone actions for negligent inflicion of emotional

distress are not cognizable in Indiana.").[8]

In a supplemental filing, Plaintiffs argue that *Spangler* permits them to state a stand-alone

NIED claim without a negligence claim, if the negligent conduct caused some kind of physical

impact on the plaintiffs (the "modified-impact" rule). [DE 178]. Although Plaintiffs provide no

authority for that interpretation beyond their own discussion of *Spangler*, the Court believes the

Indiana Supreme Court's recent opinion in *Community Health Network, Inc. v. McKenzie*, 185

N.E.3d 368 (Ind. April 11, 2022), issued after Judge Van Bokkelen's opinion on the motions to

dismiss, provides some support for the argument.

In *Community Health*, the plaintiffs sued a health care provider after an employee gained

unauthorized access to their medical records. The plaintiffs brought claims for vicarious liability

---

[8] *See also Fitzpatrick v. City of Hobart*, No. 2:03-CV-359-PPS-APR, 2006 WL 2736127, at *9 (N.D. Ind. Sept. 25, 2006) ("Plaintiffs have not asserted any negligence claim against the Kundrats or any other defendant. Accordingly, we do not consider their claim for negligent inflicion of emotional distress."); *Doe v. Lafayette Sch. Corp.*, 846 N.E.2d 691, 701 (Ind. Ct. App. 2006) ("Doe must first prevail on a negligence claim against LSC; thereafter, she is free to claim damages for emotional distress") (abrogated on other grounds by *State Farm Mut. Auto. Ins. Co. v. Jakupko*, 856 N.E.2d 778 (Ind. Ct. App. 2006)); *Ryan v. Brown*, 827 N.E.2d 112, 118 (Ind. Ct. App. 2005) ("[I]n order for the Ryans to assert a claim for negligent inflicion of emotional distress they must first prevail in a claim of negligence.").

based on the employee's negligence, and negligent supervision and hiring by the health care provider. There was no mention of physical impact or injury; the plaintiffs sought to recover for emotional distress damages only. *See* 185 N.E.3d at 379. Under Defendants' preferred interpretation of *Spangler*, the claims should have been dismissed outright, since there was no injury that would sustain an ordinary negligence claim. Instead, the Indiana Supreme Court, citing *Spangler*, suggested that emotional damages alone could sustain a claim. The Court applied the modified-impact rule, ultimately finding that the plaintiffs could not recover under that rule because the plaintiffs did not sustain a physical impact.[9] But the court concluded: "*[B]ecause emotional-distress damages are unavailable to Plaintiffs*, both negligence claims fail." *Id.* (emphasis added). It seems that if those plaintiffs *had* satisfied the modified-impact rule, they would have been permitted to proceed with a claim for emotional distress damages, even with no other cognizable injury.[10]

As applied to this case: *Community Health* suggests that Plaintiffs may be able to proceed on an NIED claim[11], even if their only cognizable injury is emotional distress. The proposed complaint supports an inference that Plaintiffs could satisfy the modified-impact rule, because Defendants caused a direct physical impact: Plaintiffs' contact with the contaminants.[12] [DE 162-

---

[9] The court also considered the possibility of recovery under the "bystander rule," which does not apply to the facts of this case. The bystander rule permits an NIED claim even in the absence of physical impact on the plaintiff, if the plaintiff has "witnessed or come to the scene soon []after the death or severe injury of certain classes of relatives." *Spangler*, 958 N.E.2d at 466.

[10] Another court discussing *Spangler* appears to have made a similar interpretation. *See Vestal v. Heart of CarDon, LLC*, No. 217CV00155JMSMJD, 2018 WL 3008638, at *12 (S.D. Ind. June 15, 2018) (in a case with no physical injury alleged, court remarked that NIED "is permitted, as relevant here, where the 'defendant's breach of a legal duty to the plaintiff' causes a 'direct impact' upon the plaintiff").

[11] For clarity, the Court refers to this as an NIED claim even though the claims in the *Community Health* decision were not given that label. The point is that this is would be a claim for emotional distress damages, rather than one premised on physical injury.

[12] *See Atlantic Coast Airlines v. Cook*, 857 N.E.2d 989, 996 (Ind. 2006) (citing cases); *Bader v. Johnson*, 732 N.E.2d 1212, 1221 (Ind. 2000) (claimant can satisfy the test "even though the physical impact was slight"); *Conder v. Wood*,

1, ¶¶ 168-69]. And the complaint plausibly alleges that Plaintiffs have suffered emotional distress from the fear that they or their family members could contract an illness in the future. [*Id.* ¶¶ 11, 114, 171-72]; *see Community Health*, 185 N.E.3d at 379 ("The undisputed facts show that the Plaintiffs suffered fear, anxiety, or sadness—emotional distress"). Assuming as true the allegation that prolonged contact with the contaminants significantly increases the risk of illness, it is reasonable to infer that this is not an ordinary, transient, or trivial fear. *Cf. Atl. Coast Airlines v. Cook*, 857 N.E.2d 989, 999-1000 (Ind. 2006) (affirming dismissal of an NIED claim from plaintiffs sharing a flight with an unruly passenger who lit cigarettes: "We do not suggest that the Cooks' fear and anxiety during the flight were trivial. But there was simply nothing . . . suggesting that the Cooks' fear and anxiety were anything other than temporary.").

The Court acknowledges the arguments that the emotional distress allegations are not sufficiently serious or detailed.[13] But those arguments do not leave the Court "certain" that this claim would lose a motion to dismiss. *Zimmerman*, 25 F.4th at 494. And while it is typically futile to "reassert[] claims previously determined," *City of Naperville*, 114 F. Supp. 3d at 610, this case is unusual because the *Community Health* decision was released so recently. Judge Van Bokkelen

---

716 N.E.2d 432, 435, n. 3 (Ind. 1999) (holding that the impact does not have to be directly initiated by the tortfeasor: "It matters little how the physical impact occurs, so long as that impact arises from the plaintiff's direct involvement in the tortfeasor's negligent conduct."); *Holloway v. Bob Evans Farms, Inc.*, 695 N.E.2d 991, 996 (Ind. Ct. App. 1998) (ingestion of a portion of vegetables cooked with a worm was a direct physical impact).

[13] Defendant U.S. Smelter cites *Barlow v. General Motors Corp.*, 595 F. Supp. 2d 929, 941 (S.D. Ind. 2009), for the premise that "Plaintiffs must 'present physical injury or present health effects from exposure' to satisfy" the modified-impact rule. By that standard, there could be no NIED claim here, because Plaintiffs have alleged fear but not directly alleged medical consequences from it. The Court disagrees with that reading of *Barlow*. The *Barlow* court explained:

> [P]laintiffs [seek to] argue to the jury that they should recover damages for emotional distress resulting from the fear that they might become ill as a result of exposure to PCBs. *The court assumes that such damages might be available under Indiana law in an appropriate case, one in which a plaintiff could show that she faces increased health risks. These plaintiffs, however, have offered no such evidence.*

*Id.* (emphasis added). Emotional distress damages were ultimately refused at the summary judgment stage because there was no evidence of any increased risk from the contaminants, not because "present physical injury" was required.

was not able to consider the case, and the parties have not briefed or otherwise addressed it. "It is not the Court's responsibility to research the law and construct the parties' arguments for them," *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021), and the fact that no one has addressed this case cuts against a finding that the claim is certain to lose a motion to dismiss. Therefore, Plaintiffs will be permitted to file an amended complaint that includes an NIED claim based on their allegations of emotional distress.

## E.    Medical Monitoring

Plaintiffs seek to plead a separate cause of action for medical monitoring. [DE 162-1, ¶¶ 178-184]. As discussed in oral argument, there is no independent cause of action for medical monitoring in Indiana. *See Johnson v. Abbott Labs.*, No. 06C01-0203-PL-89, 2004 WL 3245947, at *6 (Ind. Cir. Ct. Dec. 31, 2004) ("Indiana does not recognize medical monitoring as a cause of action."); *Hunt v. Am. Wood Preservers Inst.*, No. IP 02-0389-C-M/S, 2002 WL 34447541, at *1 (S.D. Ind. July 31, 2002) (a "medical monitoring claim . . . is not cognizable in the State of Indiana"). In the context of this motion to amend, the Court does not need to determine whether medical monitoring can be an appropriate form of damages for an existing claim.

## F.    Strict Liability

Plaintiffs also attempt to re-plead a strict liability claim against all defendants. Judge Van Bokkelen dismissed the prior strict liability claims based on the failure to sufficiently plead injury. For the 81 plaintiffs who have not pled a present physical injury, the proposed new claim is futile for the same reasons. *See supra* (§ II.C.1). For the three plaintiffs who have pled a present injury, Defendants argue the claim would not survive a motion to dismiss because the alleged activities were not "abnormally dangerous" as required to impose strict liability.

"Indiana recognizes the doctrine of strict liability stemming from carrying on an abnormally dangerous activity." *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 891 F.2d 611, 615 (7th Cir. 1989) (citing *Enos Coal Mining Co. v. Schuchart*, 188 N.E.2d 406 (Ind. 1963); *Erbrich Prods, Co. v. Wills*, 509 N.E.2d 850, 853 (Ind. Ct. App. 1987)). "One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." *Fechtman v. U.S. Steel Corp.*, 994 N.E.2d 1243, 1247 (Ind. Ct. App. 2013) (quoting Restatement (Second) of Torts § 519 (1977)).

Indiana courts consider six factors in assessing whether an activity is "abnormally dangerous": (1) risk of harm; (2) likely severity of that harm; (3) inability to eliminate the risk by the exercise of reasonable care; (4) extent to which the activity is not a matter of "common usage"; (5) inappropriateness of the activity for the place where it is carried on; and (6) extent to which its value to the community is outweighed by its dangerous attributes. *Id*. (citing Restatement (Second) of Torts § 520 (1977); *Bridges v. Ky. Stone Co., Inc.*, 425 N.E.2d 125, 126 (Ind. 1981)). "The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it." *Fechtman*, 994 N.E.2d at 1247.

Several defendants cite to the decision of the Indiana Court of Appeals in *Fechtman*, in which the court declined to extend strict liability when a contractor sustained severe carbon monoxide poisoning doing maintenance work at the Gary Steel Works. 994 N.E.2d at 1244-45. Addressing the first two factors, the court acknowledged that there was at least some risk of serious harm created by the maintenance. *Id*. at 1247-48. Addressing the fourth, fifth, and sixth factors, the court noted that the maintenance activity was "not a common activity for most people," but

that it was appropriate to the location, and provided value to the community. *Id*. at 1249. The most important factor, in the court's view, was whether the risk could be eliminated by the exercise of reasonable care. Drawing heavily on the trial record, the court found that U.S. Steel had "dump[ed] its dust catchers multiple times a day for over a decade in a safe manner without prior injuries," and therefore, this activity did not create the sort of "unavoidable" risk that should give rise to strict liability. *Id*. at 1248-49.

At the time of the *Fechtman* decision, "it appear[ed] that strict liability for abnormally dangerous activities ha[d] been limited in Indiana to blasting[,] and housing wild animals in a residential area." *Id*. at 1250 (citing cases).[14] *Fechtman* therefore provides some support for Defendants' argument that the alleged activities at the site were not "abnormally dangerous." There are other cases in which manufacturing processes that led to contamination were found not to be abnormally dangerous. *See, e.g., Dow Chem. Co. v. Ebling*, 723 N.E.2d 881, 909 (Ind. Ct. App. 2000) (pesticides); *Erbrich*, 509 N.E.2d at 856 (manufacture of bleach using chlorine gas). However, the Court does not read *Fechtman*, or any other case cited by Defendants[15], to categorically preclude industrial processes as abnormally dangerous activities.

---

[14] From the context, it is clear the *Fechtman* court was not saying that some legal authority had confined the definition to those two activities, but rather that those were the only two examples the court was aware of. *See* 994 N.E.2d at 1250.

[15] The Hammond Defendants point to the statement in *Westinghouse Elec. Corp.*, 891 F.2d at 615-16, that "there can be no liability for merely manufacturing dangerous products." But that statement referred to the product liability context, to show that a manufacturer who makes a potentially dangerous product without any defects should not be the "insurer" if the product that was misused by a later user: "[W]e are unwilling to extend the doctrine of strict liability for an abnormally dangerous activity to the party whose activity did not cause the injury." *Id*. (quoting *Martin v. Harrington and Richardson, Inc.*, 743 F.2d 1200, 1204 (7th Cir. 1984)). This situation is different, because the plaintiffs are seeking to hold Defendants liable based on their own actions, rather than insuring those of a subsequent user.

Unlike in *Fechtman* and several cases cited by Defendants, there has been little development of any factual record bearing on any of the factors.[16] It is unclear how safe the alleged activities were. Although "the issue of whether an activity is abnormally dangerous is a question of law," *Erbrich*, 509 N.E.2d at 857, in the context of a motion to dismiss it may be hard to determine whether they could be done safely with the exercise of reasonable care.

The Court is not "certain" that this claim would lose a motion to dismiss (*Zimmerman*, 25 F.4th at 494), but acknowledges arguments to the contrary. The case law can be read to suggest that the alleged activities are not abnormally dangerous as a matter of law. The proposed complaint also alleges efforts by the EPA to regulate Defendants' practices, which could be a factor mitigating against strict liability. [DE 162-1, ¶¶ 88-102]; *see Dow Chem. Co.*, 723 N.E.2d at 908-09 (EPA's registration of a pesticide weighed against a finding that production of the pesticide was an abnormally dangerous activity). However, on the record thus far, the Court does not find that amendment is futile with respect to the strict liability claims of the three plaintiffs alleging a present physical injury.

## G.   Nuisance

Finally, Plaintiffs seek to bring a nuisance claim against Defendant DuPont only. Under Indiana law, a nuisance exists if something is: "(1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property." Ind. Code § 32-30-6-6. A person suffering a nuisance can bring an action to "abate or enjoin" the nuisance. § 32-30-6-7. A nuisance claim

---

[16] *Cf. Bridges v. Ky. Stone Co.*, 425 N.E.2d 125 (Ind. 1981); *Erbrich*, 509 N.E.2d at 857 (finding upon review of the summary judgment record that, "unlike blasting operations or crop dusting where the chances of damage or injury are inevitable despite the amount of care taken, the manufacture of household bleach with chlorine gas does not encompass the same unavoidable mishaps"); *Inland Steel v. Pequignot*, 608 N.E.2d 1378 (Ind. Ct. App. 1993).

therefore "provides a mechanism for resolving conflicts between competing, simultaneous uses of nearby property." *Lilly Indus., Inc. v. Health-Chem Corp.*, 974 F. Supp. 702, 706 (S.D. Ind. 1997).

The West Calumet Housing Complex has been demolished, and only four of the 84 plaintiffs are alleged to still be living on contaminated land. [*See* DE 162-1, ¶ 33]. For the other 80 plaintiffs, there can be no action to "abate or enjoin" a nuisance; they are no longer engaged in "competing, simultaneous use" of the land. *Lilly Indus.*, 974 F. Supp. at 706; *see also City of Gary v. Shafer*, 2007 WL 3019918, at *4 (N.D. Ind. Oct. 4, 2007) ("The law of nuisance is intended to be used by parties who are concurrent property owners . . ."). The statute does not contemplate recovery for a past nuisance, and the Court is not aware of any case in which that was permitted. *See Hostetler v. Johnson Controls Inc.*, No. 3:15-CV-226 JD, 2021 WL 5087261, at *13 (N.D. Ind. Nov. 2, 2021) (the statute "does not provide for damages alone . . . rather damages go hand-in-hand with enjoiner and abatement"). Plaintiffs did not address DuPont's argument on this point, and have provided no further argument indicating that this claim would survive a motion to dismiss. Accordingly, the Court finds that the proposed amendment would be futile as to the 80 plaintiffs not currently living on contaminated land.

The Court turns to the remaining four plaintiffs, Minerva Ramirez, D.R.1, C.R., and M.R., who are now "residents of a private, single family home" on the Site [DE 162-1, ¶ 34]. DuPont's facility closed in 1949, but Plaintiffs allege that "[]contaminated groundwater continues to migrate" from DuPont's property to those plaintiffs' residence. [*Id.* ¶¶ 61-65]. DuPont argues these four plaintiffs cannot state a nuisance claim, because the disputed facility is now closed and "[a] nuisance claim generally contemplates an action that is designed to cease or lessen the defendant's *continued* offensive behavior." *Rolan*, 2017 WL 3191791, at *15 (quoting *KB Home Ind. Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297, 306 (Ind. Ct. App. 2010)) (emphasis added).

There have been differing interpretations within this district as to whether a nuisance claim can lie when a defendant's polluting conduct has ceased, but the nuisance has not. In *Rolan*, the court rejected a nuisance claim against DuPont, noting that DuPont's activity stopped in 1949, and plaintiffs had "only allege[d] that [] DuPont's 'contamination occurred and persists.'" 2017 WL 3191791 at *15. The court found that because DuPont's conduct was not ongoing, there could be no nuisance claim, even if the land remained contaminated. That case in turn relied on *KB Home Indiana Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297 (Ind. Ct. App. 2010). In *KB Home*, the defendant's active conduct ceased in 1993 when it sold the property. The court declined to permit a nuisance claim: "Rockville's contamination of the property ceased in 1993 and it sold the property to a subsequent purchaser. Thus, under these circumstances, KB has failed to show that a nuisance existed or was ongoing that could be abated or enjoined. Put another way, the damage has already been done, and KB's cause of action against Rockville sounds in negligence," not nuisance. *Id*. at 307.

However, in *Hostetler*, again from this district, the court permitted a nuisance claim to proceed where the defendant was no longer polluting but was actively remediating the site. The court noted "that toxic materials are still present at the site," creating a "genuine issue of material fact as to whether the pollutants are still migrating over to Plaintiffs' homes so as to constitute nuisance." 2021 WL 5087261 at *14. The court cited *Reed v. Reid*, 980 N.E.2d 277, 294 (Ind. 2012), for the premise that "even though a defendant stops polluting by the time the lawsuit is filed, a nuisance claim can proceed so long as the waste remains on the land unabated."[17] *Id*.; *see*

---

[17] Although *Reed* did not address this point directly, the court's summary of the facts indicated that the defendant's active conduct ended in 2004, and the court permitted a nuisance claim filed in 2008. 980 N.E.2d at 284-85.

*also Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49, 53 (Ind. Ct. App. 1993) (permitting a nuisance claim based on conduct occurring between 1957 and 1962).

It is questionable whether the logic of *KB Home* applies to this situation, since the defendant in *KB Home* no longer had any control over the property. *See* 928 N.E.2d at 307 ("[I]t sold the property to a subsequent purchaser. Thus, under these circumstances . . . the damage has already been done"). In this case, DuPont still owns the property and has contributed to the remediation effort. [DE 162-1, ¶¶ 60, 65, 99]. Regardless, considering this split of authority, and particularly the Indiana Supreme Court's decision in *Reed*, it is not clear that the nuisance claim of the four plaintiffs who remain on contaminated land is futile. *See Haber Land Co. v. Am. Steel City Indus. Leasing, Inc.*, 388 F. Supp. 3d 1050, 1056-58 (S.D. Ind. 2019) (denying a motion to dismiss a nuisance claim and rejecting *KB Home*'s requirement of "continued offensive behavior" as "dictum . . . wholly unreconcilable" with *Gray*).

### III.    CONCLUSION

Plaintiffs will be permitted to file an amended complaint consistent with the findings described herein. In summary:

- Plaintiffs Minerva Ramirez, C.R., and Liduvina Espinoza may pursue a claim of negligence based on their present physical injuries;

- All plaintiffs may pursue a claim of negligent infliction of emotional distress;

- No plaintiffs may pursue a separate cause of action for medical monitoring;

- Plaintiffs Minerva Ramirez, C.R., and Liduvina Espinoza may pursue a claim of strict liability based on their present physical injuries;

- Plaintiffs Minerva Ramirez, D.R.1, C.R., and M.R. may pursue a claim of nuisance against Defendant DuPont.

22

The Court **GRANTS in part and DENIES in part** Plaintiffs' Motion for Leave to File Second Amended Complaint [DE 162], and **GRANTS** Defendant's DuPont's Request for Judicial Notice [DE 168], as described herein. Plaintiffs are granted until **October 24, 2022** to file an amended complaint consistent with this opinion.

So ORDERED this 23rd day of September, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT