UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DESHEENA ADAMS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Cause No. 2:18-CV-375-PPS-JEM |
| ) | |
| ATLANTIC RICHFIELD COMPANY, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **OPINION AND ORDER**

This action is one of several related toxic tort lawsuits brought in this district by various groups of East Chicago residents.[1] In a forty-one page Opinion and Order, I previously granted in part motions to dismiss Plaintiffs' Second Amended Complaint [DE 224 (SAC)] filed by Defendants Atlantic Richfield Company, E.I. du Pont de Nemours and Company and the Chemours Company (collectively, "DuPont"), and Hammond Lead Products, LLC, Halstab, LLC, Hammond Group, Inc., and Halox, LLC (collectively, "Hammond Lead").[DE 251; *see* DE 228; DE 231; DE 236.] Plaintiffs have filed a motion requesting that I reconsider this ruling. [DE 257.]

---

[1] *See Holiday et al. v. Atlantic Richfield Company*, No. 2:16-CV-525 (Dec. 20, 2016); *Barbee et al. v. Atlantic Richfield Company et al.*, No. 2:17-CV-193 (Apr. 26, 2017); *Baker et al. v. Atlantic Richfield Company et al.*, No. 2:17-CV-429 (Nov. 15, 2017); *Alvarez et al. v. Atlantic Richfield Company et al.*, No. 2:17-CV-414 (Oct. 31, 2017). *See also S.A. et al. v. E.I. Du Pont de Nemours and Co. et al.*, No. 2:22-CV-359 (Nov. 22, 2022). I have been advised that a group of plaintiffs are separately pursuing claims against the City of East Chicago and various other state and municipal entities, as part of two consolidated actions currently pending in Lake Superior Court. *See G.J.2 et al. v. Indiana State Dept. of Health, et al.*, No. 45D05-1803-CT-3 (Mar. 13, 2018). In state court, the plaintiffs assert that the government knowingly and intentionally constructed West Calumet and Carrie Gosch on polluted land, let plaintiffs live there unwittingly, and failed to warn them about the contamination.

The motion presently before me adopts a kitchen-sink approach, taking issue with prior rulings in the case and reasserting numerous arguments that I previously considered and rejected in ruling on Defendants' motions to dismiss. The parties submitted briefing and I held a hearing to provide Plaintiffs a final opportunity to be heard on the matter. [DE 264; DE 265; DE 266; DE 279; DE 281; DE 287; DE 290.] For the reasons that follow, the motion will be denied.

## Procedural Background

As detailed in my prior Opinion and Order, this case has been stalled at the pleadings stage. [*See* DE 251 at 2–11.] When I received the case following Judge Van Bokkelen's ruling on a round of motions to dismiss, it was already years in the making. [*See* DE 157; DE 195.] With each successive round of pleadings, Plaintiffs have tried to adequately allege injuries caused by Defendants' polluting activities to conform to the Court's rulings on what is required to plead claims for relief under Indiana tort law. In ruling on the pending motion, I assume the parties' familiarity with both the operative factual allegations in the Second Amended Complaint and my analysis of Plaintiffs' state law claims sounding in negligence, negligent infliction of emotional distress, nuisance, and strict liability. [*See* DE 251 at 6–10.]

To briefly recap, before I received the case, Judge Van Bokkelen ruled on a round of motions to dismiss and permitted Plaintiffs to proceed on some of their tort claims. [DE 157.] Plaintiffs, believing they could correct the deficiencies Judge Van Bokkelen had identified, sought leave to amend their complaint. [DE 162.] In their proposed

2

amended complaint, plaintiffs reasserted claims of nuisance, strict liability, negligence, and NIED under Indiana law. After reviewing Judge Van Bokkelen's order, former Magistrate Judge Kolar (since confirmed to the Seventh Circuit) granted Plaintiffs leave to file the amended complaint; but in doing so, he noted it presented "several difficult or unsettled legal issues." [DE 180 at 7.]

Initially, Judge Kolar concluded that only 3 of the 84 plaintiffs named in the proposed amended complaint alleged a present physical injury related to "exposure" to toxic substances, as required to state a negligence claim. The 81 other plaintiffs were denied leave to amend to assert negligence claims, and Judge Kolar found that further amendment would be futile. *Id.* at 9–12. In sum, only Minerva Ramirez, C.R., and Liduvina Espinosa were permitted to proceed on their negligence claims, as they were the only plaintiffs that adequately alleged present physical injuries. *Id.* at 12.

As to the Plaintiffs' NIED claims, Judge Kolar observed that Judge Van Bokkelen had previously ruled that absent an injury sufficient to sustain a negligence claim, Plaintiffs could not state an NIED claim under Indiana law based on alleged "emotional distress" damages, in the absence of an ordinary, "standalone" negligence claim. [DE 180 at 13 (citing DE 157 at 9).] Following Judge Van Bokkelen's order, the Indiana Supreme Court issued an opinion potentially supporting an alternative interpretation of state law on this issue and which potentially muddied the water. *See Community Health Network, Inc. v. McKenzie*, 185 N.E.3d 368 (Ind. 2022). In light of this new authority, Judge Kolar was not "certain" the proposed NIED claims would fail on a motion to

3

dismiss, so he granted all Plaintiffs leave to amend with respect to the NIED claims. [DE 180 at 15–16.]

Thereafter, defendants moved to dismiss. After reviewing the latest vintage of the complaint, I found that Plaintiffs' factual allegations still failed to make out plausible claims in certain respects. [DE 251.] In sum:

- I dismissed Counts I and II, asserting strict liability claims against Atlantic Richfield, DuPont, and Hammond Lead. *Id.* at 31–36.

- I dismissed Counts IV and VII, respectively asserting negligence and NIED claims against Atlantic Richfield. *Id.* at 14–20, 24–30.

- I dismissed Count V, asserting a private nuisance claim against DuPont. *Id.* at 36–40.

- As to the remaining NIED claim against DuPont and Hammond Lead (Count VI), I found that only Plaintiffs Minerva Ramirez, C.R., and Liduvina Espinosa (collectively, the "Ramirez plaintiffs") adequately alleged facts establishing direct physical impacts to proceed under Indiana's "modified impact rule." The balance of Plaintiffs (*i.e.*, those other than the three Ramirez plaintiffs) failed to adequately allege facts establishing such impacts caused by the alleged lead contamination, so I dismissed their NIED claim. *Id*. at 24–30.

Given that Plaintiffs had twice been granted an opportunity to address similar issues with the aforementioned claims and made no specific arguments for leave to amend in conjunction with opposing the motions to dismiss, I dismissed the claims with prejudice. *Id.* at 40–41.

**Legal Standard**

While Plaintiffs' motion says it is brought under Rule 50(e) of the Federal Rules of Civil Procedure [DE 257 at 1], it seems clear that this is a typo. In reality, Plaintiffs

4

may seek "reconsideration" of a prior judgment or order under either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. Rule 59(e) provides for reconsideration of final judgments; but it does not apply in this case, as no final judgment has been entered. *See* Fed. R. Civ. P. 59. Rule 60(b) provides for relief from "a final judgment, *order*, or proceeding" for one of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed R. Civ. P. 60 (emphasis added).

The circuit has explained that, technically speaking, there is no such thing as a 'motion for reconsideration' under the Federal Rules of Civil Procedure. *Hope v. United States*, 43 F.3d 1140, 1142 n.2 (7th Cir. 1994). *See also Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 n.1 (7th Cir. 2001). Nevertheless, they are allowed under limited circumstances "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale De Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996)). *See also, e.g., Miller v. City of Plymouth*, 2010 WL 2194842, at *1 (N.D. Ind.

5

May 27, 2010). More specifically, a motion to reconsider is appropriate where: "(1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law since the submission of the issues to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court." *Janky v. Batistatos*, 2009 WL 10692471, at *1 (N.D. Ind. Aug. 24, 2009) (quoting *Orange v. Burge*, 451 F. Supp. 2d 957, 961 (N.D. Ill. 2006)). *See also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

In other words, a motion for reconsideration is not a vehicle to rehash arguments previously raised or waived in briefing the underlying motion or a means to relitigate issues with orders entered years earlier in the case. The circuit has said as much:

> It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.

*Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995). *See also Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). The denial of a motion to reconsider is reviewed under the deferential abuse of discretion standard. *Ahmed v. Ashcroft*, 388 F.3d 247, 250 (7th Cir. 2004 (noting that "review of the denial of a motion to reconsider is highly deferential"). With that backdrop, let's turn to the substance of Plaintiffs' motion.

6

**Discussion**

Plaintiffs do not point me to any change in controlling law or newly discovered evidence that warrants reconsideration. Rather, they assert that my decision contains manifest errors in applying Indiana law on negligence and NIED. As prefaced, the circuit has described "manifest error" as a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto*, 224 F.3d at 606. That is a high standard which, although there may be some room for debate, is simply not met in this case. It's clear that Plaintiffs disagree with my interpretation and application of Indiana law on negligence and NIED and how their factual allegations size up against the relevant authorities. But their disappointment that I did not resolve the issues in their favor falls short of the showing necessary to warrant reconsideration, which is reserved only for extraordinary circumstances.

Let's start with Plaintiffs' arguments pertaining to the negligence claim asserted against Atlantic Richfield. [*See* DE 257 at 10–12.] I determined that the claim failed because Atlantic Richfield owed Plaintiffs Minerva Ramirez and C.R. no common law duty of care. [DE 251 at 14–20.] Plaintiffs note that Judge Van Bokkelen previously determined that a property owner who processes hazardous materials on its land owes a duty to exercise reasonable care in order to prevent contamination from leaving its property, replying on Judge Springmann's decision in another case, *Rolan v. Atlantic Richfield Company*, 2017 WL 3191791 (N.D. Ind. July 26, 2017). [DE 257 at 11.] Because Judge Van Bokkelen previously indicated that Atlantic Richfield owed a duty to

7

Ramirez and C.R., Plaintiffs argue, it was inappropriate for me to evaluate their complaint in light of facts subject to judicial notice and conclude that they lacked the type of relationship giving rise to a common law duty of care under Indiana law.

This line of argument ignores the fact that I specifically considered and rejected application of *Rolan* to the facts alleged in the Second Amended Complaint. I acknowledged that Judge Van Bokkelen's prior ruling had indicated that the Ramirez plaintiffs fell within the duty of care acknowledged in *Rolan*. But I also noted that Judge Van Bokkelen's ruling "did not directly engage with the substance of Atlantic Richfield's argument." [DE 251 at 16.] In my view, facts properly subject to judicial notice reflected that the Ramirez plaintiffs lacked the type of relationship that gives rise to a common law duty of care under Indiana law. Plaintiffs did not meaningfully dispute that Ramirez and C.R. lacked an ownership interest in the property, despite residing there. And Plaintiffs did not dispute that Ramirez and C.R. could not have acquired an interest in the property until 1966, at the earliest, which was at least twenty years after Atlantic Richfield's corporate predecessors ceased their industrial activity and sold the properties they owned on the Superfund Site. *Id.* at 16–17. I specifically rejected Plaintiffs' argument that *Rolan*'s analysis of DuPont's duty applied to Atlantic Richfield in this case, based on the foregoing facts that are not meaningfully in dispute. Plaintiffs simply reassert that I should have resolved this issue in their favor.

Plaintiffs also rehash arguments based on another case discussed in my prior order, *KB Home Indiana Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297 (Ind. Ct. App. 2010).

8

[DE 251 at 17.] Judge Van Bokkelen favorably cited *KB Home* in ruling on the first round of motions to dismiss. I explained my view that *KB Home* did not broadly declare a duty owed by property owners handling hazardous materials to any and all future owners of neighboring properties. Even if *KB Home* could be read to endorse such a broad duty, the record reflected that Ramirez was not an "owner" of the property, so this authority did not save the negligence claim. *Id.* at 18–20. Plaintiffs do not engage with my prior analysis of *KB Home* or explain how it contains a "manifest error" of law. Their arguments again reflect disagreement with the result, not a manifest error of law warranting reconsideration. [*See* DE 257 at 11–12 (asserting without citing any case law aside from *Rolan* and *KB Home* that "it was wrong to restrict the duty as [the court] did to specifically foreseeable future occupiers of the land").] For the foregoing reasons, I decline to reconsider my ruling dismissing with prejudice Plaintiffs' negligence claim against Atlantic Richfield.[2]

Shifting gears, the vast majority of Plaintiffs' arguments address their NIED claims against Atlantic Richfield, DuPont, and Hammond Lead. [*See, e.g.*, DE 257 at 3–10.] The claims are based on Plaintiffs' allegations that Defendants' contaminating activities many decades ago caused them to come in contact with contaminants on their properties, and as a result they have suffered emotional distress from the fear that they

---

[2] Plaintiffs acknowledge that their NIED claim "depends on" the "duty element (along with the breach and causation elements)" of their ordinary negligence claim. [DE 257 at 5.] In other words, my determination that Atlantic Richfield owes no duty of care to the Ramirez Plaintiffs disposes of their NIED claims against Atlantic Richfield, as well. In contrast, Ramirez, C.R., and Espinosa plausibly alleged DuPont and Hammond Lead owed them a duty of care and were permitted to proceed on their negligence claims, so their NIED claims rise and fall based on their alleged injuries under Indiana's "modified impact rule."

9

or their family members could contract an illness in the future. [DE 224, ¶¶ 29 (Plaintiffs were "exposed to lead, arsenic, and/or other toxic substances"), 104 (Plaintiffs "ingested hazardous levels of lead . . . while a resident of the Site"), 105 (Plaintiffs have "experienced and/or suffered an increased risk of experiencing one or more of the following injuries," including *inter alia* fainting, high blood pressure, lung disease, decreased IQ, hyperactivity, aggression), 106 (Plaintiffs "suffered severe emotional distress as a direct and proximate result of his or her direct physical contact with lead, arsenic or other chemical contamination at the Site by their ingestion of the same into their bodies, and the resulting fear of illness, permanent injury and death to themselves and their children"), 162 (Plaintiffs were "exposed to a disease-causing agent or substance"), 163 (Plaintiffs "actually ingested the harmful agents into their bodies").]

Most of the Plaintiffs reassert NIED claims based on severe emotional distress caused by "an increased risk of experiencing" medical conditions associated with exposure to lead contamination, such as decreased IQ, hyperactivity, and aggression (among numerous other conditions defined at various levels of generality, like "weight loss" and "personality change"). *See id.*, ¶¶ 105, 150. In contrast, Ramirez, C.R., and Espinosa allege that they not only suffered an "increased risk" of contracting one of these ailments, but that they had respectively contracted "non-genetic environmental ovarian cancer," "cognitive and developmental learning disabilities," and "cancer" as a result of ingesting lead contamination. *Id.*, ¶¶ 151–53, 156.

10

Judge Van Bokkelen previously dismissed the claims, finding that no NIED claim may lie under Indiana law unless accompanied by a properly pled, ordinary negligence claim. [DE 157 at 15 (citing *Spangler v. Bechtel*, 958 N.E.2d 458 (Ind. 2011)).] As explained above, Judge Kolar noted that the Indiana Supreme Court's decision in *Community Health Network, Inc. v. McKenzie*, 185 N.E.3d 368 (Ind. 2022) may provide a basis for Plaintiffs to assert NIED claims based on "emotional distress" damages in the absence of a viable negligence claim. [DE 180 at 13–16.] In light of *Community Health*, Judge Kolar was not "certain" the proposed claims would fail on a motion to dismiss. Accordingly, all Plaintiffs were granted leave to reassert NIED claims, even if they did not allege present physical ailments caused by lead exposure as required to state an ordinary, standalone negligence claim. *Id.* at 16.

Thus, the crux of the issue was whether Plaintiffs adequately alleged sufficient injuries to make out at cognizable claim of NIED, and whether *Community Health* warranted a departure from Judge Van Bokkelen's prior order. I began my analysis by noting Judge Van Bokkelen's prior ruling, which took at face value *Spangler*'s admonition that Indiana law had "never permitted . . . an action seeking damages for emotional distress predicated upon a breach of an alleged duty not to inflict emotional injury on another," and "independent, stand-alone actions for negligent infliction of emotional distress are not cognizable." 958 N.E.2d at 466. *See, e.g.*, *Vestal v. Heart of CarDon, LLC*, 2018 WL 3008638, at *12 (S.D. Ind. June 15, 2018) (applying *Spangler*) (NIED "is not a stand-alone cause of action, but instead is permitted . . . where the

11

'defendant's breach of a legal duty to the plaintiff' causes a 'direct impact' upon the plaintiff"). I further noted that *Spangler* recognized emotional-distress damages are recoverable in a negligence-based claim only when a party satisfies either the "modified impact rule" or the "bystander rule." *Id.* at 471.

Given that Judge Kolar granted leave to amend in light of a potential change in law under *Community Health*, I then turned to this newer authority. The case provides little analysis of the modified impact rule, beyond reaffirming that under *Spangler* a plaintiff must "personally sustain[] a physical impact." 185 N.E.3d at 379 (citing 958 N.E.2d at 467). The plaintiffs in *Community Health* sued a healthcare provider for negligence after its employee accessed their medical records without authorization. The plaintiffs did not allege a physical impact or injury – just that they had suffered emotional distress as a result of the defendant's negligence with respect to its handling of their medical records. *Id.* at 379. In straightforward fashion, the Indiana Supreme Court held that the "undisputed facts establish[ed] that [the plaintiffs] suffered no physical impact" as a result of the misuse of their private records. The decision does not appear to evaluate the type of "physical impact" required to state a claim for NIED under the modified impact rule, and I found that it was not a basis to depart from Judge Van Bokkelen's order dismissing Plaintiffs' NIED claims to the extent they failed to adequately allege a "standalone" negligence claim. [DE 251 at 30 (citing DE 157 at 15).] Accordingly, only the Plaintiffs who alleged a physical impact from the alleged lead exposure (*i.e.*, actually contracting a disease linked to lead exposure, rather than

exposure that could *potentially* cause physical changes) were permitted to proceed on their NIED claims. *Id.*

Plaintiffs assert that I failed to address "the central question" of whether they "sufficiently plead[ed] a direct physical impact" under the modified impact rule by alleging "long-term ingestion of harmful chemicals that reside in the body," in the absence of any claim that they contracted a diagnosable illness as a result of the alleged exposure. [DE 257 at 23–25.] As with Judge Van Bokkelen's prior order, my ruling was couched in language used in *Spangler*: only the three Plaintiffs with viable "ordinary" negligence claims could proceed on their NIED claims. [DE 251 at 30.] Plaintiffs forcefully critique Judge Van Bokkelen's "faulty reasoning" and assert that I adopted it "without qualification." [DE 257 at 6.]

But I did not adopt Judge Van Bokkelen's analysis wholesale. Recognizing the distinction between a physical injury required to state a negligence claim and a "direct physical impact" required to state a NIED claim, I evaluated Plaintiffs' factual allegations and concluded that the Plaintiffs who merely alleged exposure to contaminants and an increased risk of developing ailments (as opposed to diagnosed physical conditions) did not sufficiently plead a direct physical impact required to state NIED claims under the modified impact rule. By contrast, the three Plaintiffs who alleged diagnosed health conditions (*i.e.*, physical changes in their bodies as a result of the alleged exposure, which gave rise to emotional distress that any reasonable person

13

would feel upon receiving such a diagnosis) were permitted to proceed with their NIED claims.

My prior order noted that the historical foundations of the "impact rule" in NIED required "(1) an impact on the plaintiff; (2) which causes physical injury to the plaintiff; (3) which physical injury, in turn, causes the emotional distress." *Shuamber v. Henderson*, 579 N.E.2d 452, 454 (Ind. 1991) (citing *Kalen v. Terre Haute & I.R.R. Co.*, 47 N.E. 694 (Ind. Ct. App. 1897)). Plaintiffs correctly observe that this citation, viewed in isolation, may be read to suggest that *Shuamber* was reaffirming this distillation of the old "impact rule." In *Shuamber* the Indiana Supreme Court "re-examined" the impact rule and held that when "a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, . . . such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff." *Id.* at 455–56. Reaffirming *Shuamber*, the Indiana Supreme Court in *Spangler* reiterated that "we have permitted recovery so long as *the plaintiff personally sustained a physical impact*, in addition to emotional distress damages." 958 N.E.2d at 467 (emphasis added).

While noting its historical roots, I proceeded to evaluate post-*Shuamber* case law addressing the scope of the modified impact rule. In particular, I considered whether a "constructive impact" that falls "short of a 'physical change'" can make out a direct

physical impact supporting a NIED claim. [DE 251 at 27–28 (construing *Atlantic Coast Airlines v. Cook*, 857 N.E.2d 989 (Ind. 2006)).] In *Cook*, the court considered whether smelling cigarette smoke and feeling floor vibrations could form a direct physical impact supporting a NIED claim. 857 N.E.2d at 999. The court noted that the plaintiffs' theory "at the very least . . . stretches the outer limits of the impact requirement," but accepted that plaintiffs may experience sensations related to exposure to smoke and vibrations that "may be characterized as physical impact," even if "certainly very 'slight,'" and proceeded to evaluate whether their alleged "mental anguish is 'not entirely speculative, exaggerated, fictitious, or foreseeable.'" *Id.* (quoting *Bader v. Johnson*, 732 N.E.2d 1212, 1221 (Ind. 2000)). The alleged physical impact was "slight to nonexistent" and "speculative," such that permitting an emotional distress claim to proceed based on plaintiffs' alleged physical impacts "would essentially abrogate the requirements of Indiana's modified impact rule." *Id.* at 1000.

*Cook* specifically reaffirmed the requirement that to state a claim under the modified impact rule, "the direct impact sustained by the plaintiff must necessarily be a '*physical*' one." The court did so in the process of rejecting NIED claims where the alleged physical impacts from inhaling smoke and feeling vibrations were "slight to nonexistent," noting that permitting the claims to proceed would "essentially abrogate" the modified impact rule distilled in *Shuamber*. *Id.* at 996 (emphasis added) (construing *Ross v. Cheema*, 719 N.E.2d 435, 437 (Ind. 1999) (rejecting claim that plaintiff sustained

15

direct physical impact necessary to recover damages for NIED by merely hearing loud pounding at her door)). *See also id.* at 1000.

As I read it, *Cook* reflects skepticism of direct physical impacts based on exposure to contamination, as such claims "stretch[] the outer limits of the impact requirement." *Id.* at 999. Plaintiffs disagree, arguing that *Cook* is distinguishable because they allege "a scenario of prolonged, direct exposure to hazardous substances," which they "touched for many years." [DE 257 at 23.] It's true that *Cook* is not a direct comparator to the facts asserted in this case. Yet, as both sides appear to acknowledge, there are no precedents "directly on point" with the situation presented: where a plaintiff asserts that mere exposure to contaminants in soil caused by pollution that took place many decades earlier on adjacent properties, in the absence of a diagnosed medical condition allegedly caused by the exposure, constitutes a direct physical impact under Indiana's modified impact rule. [*See* DE 279 at 12–13.]

The root of the issue is that the proper application of the modified impact rule in the context of toxic torts is ill defined. Indeed, in a recent case, Judge DeGuilio observed that Indiana case law provides no clear answer to whether exposure to toxic substances "constitutes a direct impact." *Hostetler v. Johnson Controls Inc.*, 2021 WL 5087261, at *15 (N.D. Ind. Nov. 2, 2021). And the fact that the Indiana Supreme Court has expressly construed *Cook* and related cases as "carefully circumscrib[ing]" the "right to seek damages for emotional distress in actions for negligence" while reiterating that "independent, stand-alone actions for negligent infliction of emotional distress are not

16

cognizable in Indiana" certainly muddies the water in the absence of clear authority applying the modified impact rule to situations involving toxic torts. *Spangler*, 958 N.E.2d 466 (citing *Cook*, 857 N.E.2d at 998). What's clear is that one may assert a NIED claim under the bystander rule or modified impact rule in the absence of allegations of present physical injuries required to state an ordinary, "standalone" negligence claim. To do so, the plaintiff must make out a "direct impact" that would cause a reasonable person emotional distress. And as reaffirmed in *Cook*, such a direct impact is necessarily "physical" in nature; claims based on impacts that are "slight," such as mere exposure to toxic contamination, are insufficient to make out a claim.

Not one case cited in the voluminous briefing submitted to date involved exposure to substances allegedly deposited on land many decades earlier. By contrast, the majority of precedents in this area have found direct physical impacts based on concrete physical harms (as opposed to speculative injuries that could develop in the future) with a direct nexus to the defendant's allegedly negligent acts. *See, e.g.*, *Alexander v. Scheid*, 7226 N.E.2d 272 (Ind. 2000) (destruction of lung tissue); *Bader v. Johnson*, 732 N.E.2d 1212 (Ind. 2000) (pregnancy); *Holloway v. Bob Evans Farms, Inc.*, 695 N.E.2d 991 (Ind. Ct. App. 1998) (consumption of worm); *Delta Airlines v. Cook*, 821 N.E.2d 400 (Ind. Ct. App. 2005) (physical changes from confrontation, such as increased pulse, breathing, heart rate, and adrenaline); *Dollar Inn, Inc. v. Slone*, 695 N.E.2d 185 (Ind. Ct. App. 1998) (plaintiff stabbed with random needle hidden in toilet paper roll in hotel bathroom); *Conder v. Wood*, 691 N.E.2d 490 (Ind. Ct. App. 1998) (hitting vehicle

with fist). *See also Z.D. v. Community Health Network, Inc.*, 217 N.E.3d 527 (Ind. 2003) (explaining physical impact requirement limits recovery of emotional distress damages to situations involving "a direct, but also physical, nexus between the negligence and the resulting distress," such that the "distress is readily ascertainable"). While the case law on point is subject to multiple reasonable interpretations, I conclude that bare allegations of "ingest[ion]" of a substance, in the absence of any physical changes resulting from such ingestion, do not form a "direct impact" required to state a claim under the modified impact rule. Plaintiffs' arguments to the contrary amount to mere disagreement on application of the relevant case law and fall short of establishing any manifest error warranting reconsideration of the dismissal of their NIED claims.

In conclusion, because no "extraordinary circumstances" warrant reconsideration of the decision entered in this case, *see First Nat'l Bank*, 321 F. Supp. 2d at 992, Plaintiffs' motion for reconsideration [DE 257] is **DENIED**.

**SO ORDERED**.

ENTERED: May 13, 2024.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT